## NATIONAL RAILROAD PASSENGER CORPORATION, Appellant,

v.

## Steven KROUSE, Appellee.

### No. 92–CV–375.

District of Columbia Court of Appeals.

Argued May 4, 1993.

Decided June 21, 1993.

---

Mark S. Landman, with whom William G. Ballaine and William A. Edelson, New York City, were on the brief, for appellant.

H. Vincent McKnight, Jr., Washington, DC, for appellee.

Before TERRY and WAGNER, Associate Judges, and KERN, Senior Judge.

WAGNER, Associate Judge:

Appellee, Steven Krouse, brought this suit against his former employer, National Railroad Passenger Corporation (Amtrak), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1988), for damages for injuries allegedly caused by Amtrak's negligence.[1] Krouse's theory of liability was that Amtrak negligently as-

signed him to work under conditions which it knew or should have known were beyond his physical capacity and which aggravated a knee and ankle injury he had sustained on the job. A jury found that Amtrak's negligence contributed to Krouse's injuries and that Krouse's contributory negligence was responsible for his injuries to the extent of twenty-five percent. Judgment was entered for Krouse on the jury verdict in the amount of $262,500, representing the amount of damages as "diminished by the jury in proportion to the amount of negligence attributable to [the] employee." *See* 45 U.S.C. § 53. Appellant's principal argument on appeal is that the trial court erred in holding that appellee's claim for negligent assignment was not barred because the cause of action did not accrue under the FELA's statute of limitations until the employer's tortious conduct ceased. We agree and hold that a cause of action under the FELA accrues when the claimant knows or, in the exercise of reasonable diligence, should know of the injury and its cause and that the limitations period is not tolled beyond that date. Since the resolution of a factual question is required to resolve the limitations question, applying a different legal standard from that relied upon by the trial court, we vacate the judgment in favor of appellee and remand the case for further proceedings and a new trial consistent with this opinion.

## I.

While performing his job as a car repairman for Amtrak on January 12, 1987, Krouse fell from a train and injured his ankle. The next day, Krouse notified his supervisor, Bernard Campbell, about the incident and told him that he needed medical attention. It was not until January 15, 1987 that Campbell completed injury report forms and referred Krouse to Amtrak's medical dispensary, where Dr. Josefino Ceballos diagnosed that he had a severely sprained ankle, with ecchymosis of the

---

1. Under the FELA, a common carrier engaged in interstate commerce is liable for damages for injuries sustained by any person while employed by the carrier which result in whole or in part from the negligence of any of the carrier's officers, agents, or employees. 45 U.S.C. § 51.

right ankle and foot.[2] Dr. Ceballos recommended that Krouse wear a figure eight ankle brace, work light duty for three weeks, and refrain from walking excessively.[3] Dr. Ceballos informed Krouse's supervisors of the recommendation for light duty. The evidence was disputed as to whether the doctor arranged a follow-up visit with Krouse; however, the undisputed evidenced shows that there were no follow-up visits.

After being informed of Dr. Ceballos' recommendation, Campbell assigned Krouse to a desk job on January 16th, but another supervisor relieved him of the assignment about two hours later after someone from the union complained about Krouse performing managerial functions. Mr. Campbell reassigned Krouse to his regular duties as a car repairman. Krouse continued to experience a mild swelling of the ankle, and he walked with a limp. He noticed that these conditions occurred more in the evening and near the end of the week. Krouse also testified that his ankle hurt worse once he returned to work in late January 1987 following a brief vacation.

Krouse complained of pain to his supervisors and co-workers intermittently between January 13, 1987 and early 1988. None of Krouse's successor supervisors was informed of his condition, and they continued to assign him jobs which required extensive walking over ballast (a gravel-like material). Finally, Krouse complained of extreme pain to his last supervisor, who accommodated him with breaks when he needed them. The evidence at trial showed that in spite of his persistent pain, Krouse signed Amtrak forms on February 3, 1987 and February 23, 1987 certifying that he could perform regular duties and had no restriction of motion. The evidence also showed that Krouse did not seek medical attention for the two years following the injury and

that he worked at outside jobs involving prolonged standing or physical labor while employed at Amtrak.

Krouse contacted an attorney on January 24, 1989 who referred him to an orthopedic surgeon, Dr. Frank Watkins. Dr. Watkins concluded that appellee's prolonged walking on uneven surfaces delayed the healing of Krouse's initial injury and further aggravated his injured ankle. Dr. Watkins advised Krouse to perform only light duty and to avoid walking on the ballast because it would further aggravate and damage his ankle. Amtrak's manager stated that such work was not available, and Krouse did not return to work for Amtrak thereafter.

Dr. Watkins referred Krouse to another specialist, Dr. Phillip Omohundro, who also attributed the severity of Krouse's injury to his continued walking over uneven surfaces at Amtrak. Dr. Omohundro determined that Krouse had a five percent permanent, partial impairment of the right ankle and a ten percent partial impairment to the right knee. Appellee's occupational disease expert, Dr. Mark Bradley, also attributed Krouse's permanent disability to his walking over uneven surfaces for prolonged periods and to the failure of appellant's medical department to restrict appellee's duties appropriately and follow up on the status of his injury and treatment.

After extensive discovery, Amtrak moved for summary judgment, arguing that the undisputed facts showed that the FELA's statute of limitations, 45 U.S.C. § 56, on Krouse's claim of negligent assignment commenced to run more than three years before appellee filed suit on March 2, 1990. Essentially, appellant argued that appellee possessed sufficient information concerning his injury and its possible cause to put him on notice of a possible claim more than three years before he filed his complaint.[4] In opposition, appellee

---

2. Dr. Ceballos explained that ecchymosis is the pooling of blood under the surface of the skin.

3. Dr. Ceballos defined excessive walking as more than fifty yards repeatedly, about three or four times a day.

4. Amtrak also contended that any claim of medical malpractice by plaintiff had to be based on

Dr. Ceballos' treatment on January 16, 1987, and therefore, was time-barred. However, appellee's counsel represented in a memorandum in opposition to the motion for summary judgment that he was not asserting a medical malpractice claim in this case. Rather, appellee contended that his claim was one for negligent assignment arising out of the conduct of his

contended his complaint was for a continuous tort, negligent assignment, for which the statute of limitations is tolled until the employee's exposure to the dangerous conditions ceases. Therefore, appellee argued, the statute of limitations commenced to run when he finally terminated his employment with Amtrak on January 25, 1989. Finding persuasive the analysis in *Page v. United States*, 234 U.S.App.D.C. 332, 729 F.2d 818 (1984), a case interpreting the limitations provision in the Federal Tort Claims Act (FTCA),[5] the trial court accepted the proposition that for torts involving a continuing injury, the cause of action accrues for statute of limitations purposes when the tortious conduct ceases. 234 U.S.App.D.C. at 335, 729 F.2d at 821. Therefore, the trial court denied appellant's motion for summary judgment, and the case proceeded to trial.

Appellant argues on appeal that appellee's claim is barred by operation of the FELA's statute of limitations, 45 U.S.C. § 56. It is appellant's position that the undisputed facts disclosed in connection with Amtrak's summary judgment motion, as well as the evidence adduced at trial, revealed that appellee knew or should have known prior to three years before filing suit the facts essential to place him on notice of a claim against Amtrak. According to appellant, it is these circumstances which determine when the cause of action accrues under the FELA's statute of limitations. Appellee argues that his claim is one for negligent assignment, a continuing tort, and that the statute of limitations under the FELA does not commence to run until the employer ceases to assign the employee to the harmful activity. It is appellee's position that the statute of limitations is tolled under such circumstances until the last day the employee was subjected to the conditions which caused the injuries, as the trial court concluded. To resolve the question presented by the parties' competing arguments, we examine the federal statute and pertinent case law.

## II.

An action cannot be maintained under the FELA unless commenced within three years from the date the cause of action accrued. 45 U.S.C. § 56. In interpreting the limitations provision in the FELA, we are required to apply federal substantive law. *See Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 335, 108 S.Ct. 1837, 1842, 100 L.Ed.2d 349 (1988); *see also Page, supra*, 234 U.S.App. D.C. at 334, 729 F.2d at 820.[6] In cases arising under the FELA, a plaintiff has the burden of alleging and proving that his cause of action has been brought within the period of limitations. *Brassard v. Boston & Maine R.R.*, 240 F.2d 138, 141 (1st Cir. 1957); *Frasure v. Union Pacific R. Co.*, 782 F.Supp. 477, 479 (C.D.Cal.1991). Compliance with the FELA statute of limitations is construed as a condition precedent to recovery, and the failure to bring suit timely bars not only the claimant's remedy, but also destroys the employer's liability. *Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112, 1117 (5th Cir.1983); *Dixon v. Martin*, 260 F.2d 809, 811 (5th Cir.1958); *Frasure*, 782 F.Supp. at 479. While the FELA statute of limitations is an affirmative defense, the burden is nevertheless on the plaintiff to establish that his case falls within an exception if brought outside of a three year time frame. *Emmons*, 701 F.2d at 1117–18; *Frasure*, 782 F.Supp. at 480; *see also Drazan v. United States*, 762 F.2d 56, 60 (7th Cir.1985) (applying the same rule under the FTCA).

The FELA does not provide a method for determining when a cause of action accrues; therefore, we look to federal case law for that interpretation. *Albert v. Maine Cent. R. Co.*, 905 F.2d 541, 543 (1st Cir.1990); *Dubose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1028 (5th Cir.1984); *see also Monessen, supra*, 486 U.S. at 335, 108 S.Ct. at 1842. Cases which involve a traumatic injury or a single breach of duty and

supervisors and personnel in Amtrak's medical department.

5. 28 U.S.C. § 2401(b) (1976).

6. *Page* involved the interpretation of statutory time limitations under the FTCA.

an immediately manifest injury pose little difficulty in determining the commencement of the limitations period. In such cases, the general rule for torts is that the cause of action accrues at the time the plaintiff's interest is invaded or at the time the tortious act is committed which causes injury. *Clay v. Union Carbide Corp.*, 828 F.2d 1103, 1106 (5th Cir.1987); *Brassard, supra,* 240 F.2d at 141 (citing RESTATEMENT, TORTS § 899 comment c). More problematic are cases involving latent injuries which cannot be discovered immediately or those where the injury has an indefinite onset and progresses over many years unnoticed. *See Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 358 (3d Cir.1986). In such cases, federal courts have applied a discovery rule, derived from the interpretation of the United States Supreme Court in two cases, *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) and *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).[7]

In *Urie,* the plaintiff sued his employer for damages under the FELA claiming that he had contracted silicosis, a lung disease, as a result of inhaling silica dust during the thirty years or so preceding the filing of suit. 337 U.S. at 165–66, 69 S.Ct. at 1022–23. Urie's condition was first diagnosed, and he ceased work, one year before filing his complaint. *Id.* The Supreme Court was persuaded that neither the intent of the FELA nor the traditional purposes of statutes of limitations would be served by interpreting the Act to bar an assertion of claims which were unknown and unknowable in time to file within the specified period of limitations. *Id.* Therefore, the court set forth a discovery rule, holding

that the cause of action accrues when the accumulated effects of the deleterious substance manifest themselves. *Id.* at 170, 69 S.Ct. at 1025 (quoting *Associated Indemn. Corp. v. State Industrial Accident Comm'n,* 124 Cal.App. 378, 381, 12 P.2d 1075, 1076 (1932)).

In *Kubrick, supra,* the Supreme Court applied the discovery rule in a case under the FTCA and held that the statute of limitations begins to run from the time the injured party has sufficient critical facts to put him on notice that a wrong has been committed for which he should undertake an investigation to determine his entitlement to redress. 444 U.S. at 123, 100 S.Ct. at 360.[8] At issue in *Kubrick* was whether a claim for medical malpractice under the FTCA accrues "when the plaintiff knows both the existence and the cause of his injury or at a later time when he knows that the acts inflicting the injury may constitute medical malpractice." *Id.* at 113, 100 S.Ct. at 355. The rule derived from *Kubrick* is that the statute of limitations begins to run from the time that the plaintiff has sufficient facts to put him or her on notice of the injury and its probable cause. *Id.* at 117, 100 S.Ct. at 356. The Supreme Court rejected the notion that for statute of limitations purposes a plaintiff's ignorance of his legal rights should be treated the same as his lack of knowledge of the fact of the injury and its cause. *Id.* Having knowledge of the fact of the injury and who caused it, a putative malpractice plaintiff is required under the *Kubrick* rule to determine within the period of limitations, with the help of professional advice if

---

**7.** Although *Kubrick* arose under the FTCA, federal courts have relied upon it in conjunction with *Urie* in setting the parameters of the discovery rule under the FELA. *Albert, supra,* 905 F.2d at 544; *Dubose, supra,* 729 F.2d at 1030; *see also Kichline, supra,* 800 F.2d at 358–59.

**8.** In conceding the application of the discovery rule in a dental malpractice case, this court stated that it rejected the Supreme Court's interpretation of the discovery rule in *Kubrick* insofar as it required only knowledge of the injury and its probable cause to commence the running of the limitations period. *Bussineau v. President & Directors of Georgetown College,* 518

A.2d 423, 435 (D.C.1986). In *Bussineau,* we noted our adherence to the following rule: "for a cause of action to accrue where the discovery rule is applicable, one must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing." *Id.* The *Bussineau* rule is not determinative of the outcome in this case because we address here the meaning of accrual of a cause of action under a federal statute for which we must look to federal case law for interpretation. *See Albert, supra,* 905 F.2d at 543; *Dubose, supra,* 729 F.2d at 1028.

necessary, whether to sue or not. *Id.* at 124, 100 S.Ct. at 360.

In resolving cases under the FELA, federal courts have applied the discovery rule as set forth in *Urie* and refined by *Kubrick* for injuries or illnesses which manifest themselves sometime after the initial exposure to the harm or after continued exposure to it. *See, e.g., Fries v. Chicago & N.W. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir.1990) (employee has affirmative duty to investigate potential cause of injury, and statute of limitations not tolled beyond date when injury manifests itself); *Albert, supra*, 905 F.2d at 544 (statute of limitations commences to run when employees become aware of the disease and its cause; employees have duty to investigate upon discovering what they believe to be a work-related injury); *Kichline, supra*, 800 F.2d at 360 (accrual date for limitations purposes does not extend beyond time claimant becomes aware of injury and its cause); *Dubose, supra*, 729 F.2d at 1030 (*Kubrick* defines outer limits of discovery rule under the FELA).[9] In *Fries, supra*, the employee sued the employer for damages claiming negligent assignment in that the employer required him to work near loud industrial noise and failed to provide him with ear protection. 909 F.2d at 1094. The court adopted a rule that the statute of limitations accrues when the injured party discovers the injury and its potential cause. *Id.* In *Albert*, the appellant contended that the statute of limitations could not begin to run until the injured party knows definitely that his injury is work-related. 905 F.2d at 544. The *Albert* court disagreed and held that once the claimants believed that they had a hearing loss which was caused by employment, they had a duty to investigate to confirm or deny that belief. *Id.* Like the *Fries* court, the *Albert* court expressed the view that to hold otherwise would render the FELA statute of limitations meaningless. *Id.*

Applying the rules extracted from this line of cases, appellant argues that the undisputed facts show that Krouse was aware of the requisite facts to start the running of the statute of limitations more than three years preceding the filing of his complaint. Before addressing that claim, we reject appellee's argument that the continuing tort of negligent assignment differs from the occupational illness cases in such a way as to warrant a different interpretation of the statute of limitations. Rather, we agree with appellant that such cases also involve continuing torts, an ongoing breach of duty with injuries resulting from a succession of negligent acts. *See Fogg v. National R.R. Passenger Corp.*, 585 A.2d 786, 789 (D.C.1991).[10] Here, ap-

---

9. Federal trial courts have also applied the discovery rule as derived from *Urie* and *Kubrick* under which the cause of action accrues when a plaintiff has knowledge of his injury and its possible cause. *See Frasure, supra*, 782 F.Supp. at 480; *Ricard v. Elgin, Joliet & Eastern Ry. Co.*, 750 F.Supp. 372, 374–75 (N.D.Ind.1990); *Stokes v. Union Pacific R. Co.*, 687 F.Supp. 552, 555 (D.Wyo.1988); *Corrigan v. Burlington Northern R.R., Inc.*, 612 F.Supp. 665, 668 (D.Minn.1985). Some have had occasion to reject specifically the so-called continuing tort doctrine which would toll the statute of limitations until the tortious conduct ceases. *Ricard, supra*, 750 F.Supp. at 375 (defendant's continuing tortious conduct does not toll statute of limitations when plaintiff has knowledge of the fact of injury and its possible cause); *Stokes, supra*, 687 F.Supp. at 554 (continuing tortious conduct by a defendant will not stop limitations clock once plaintiff obtains requisite information of injury and cause at an earlier date); *but see Corrigan*, 612 F.Supp. at 668 (adopting the tolling rule from decision under the FTCA in a FELA suit for negligent assignment).

10. In *Fogg*, we recognized the railroad's continuing duty to assign its employees to work for which they are reasonably suited and that it breaches that duty if it negligently assigns the employee to work beyond his capacity. We also approved the trial court's jury instruction stating the law on an employer's liability under the doctrine of negligent assignment. *Id.* at 789. After explaining that the employer has a continuing duty, the trial court instructed the jury, and we approved the following statement of the law:

> A railroad company breaches that duty if it negligently requires its employee to perform work beyond her physical capacity, that is if the Defendant knew or should have known of the Plaintiff's diminished work capacity and in spite of that knowledge Defendant unreasonably continued to assign Plaintiff to tasks that Defendant knew or should reasonably have known would aggravate her physical condition.

*Id.; see also Ragsdell v. Southern Pac. Transp. Co.*, 688 F.2d 1281, 1283 (9th Cir.1982) (employ-

pellee contended that his employer negligently assigned him to a job which exposed him to an unreasonable risk of harm which resulted in an injury caused by extensive walking over uneven surfaces over a long period of time. We perceive no meaningful distinction between the long exposure of an employee by his employer to work conditions which cause industrial diseases over time and one where the employer negligently assigns the employee and thereby aggravates an injury in such a way that the precise time of the cause and effect cannot be pinpointed.

To support his argument that the statute of limitations did not commence to run in this case until the tortious conduct ceased, upon termination of his employment, appellee relies on *Fletcher v. Union Pac. Ry. Co.*, 621 F.2d 902 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). In *Fletcher*, the plaintiff injured his back in 1962 and continued to perform his job which required heavy lifting until 1975 when he was given light duty. Fletcher's doctor had written the railroad in 1973 recommending light duty. Fletcher was rejected for disability in July 1974 after which he was told he needed a fusion operation. On March 4, 1975, he notified the railroad that he was making a claim. On April 16, 1975 his doctor told him he could not return to his current job, and he commenced suit on June 8, 1977. Fletcher sought to recover both for his original back injury and negligent assignment to jobs which required him to lift heavy objects after his employer was placed on notice of his injury. The *Fletcher* court reversed the lower court's dismissal of the second count on statute of limitations grounds, holding that the negligent assignment claim, which represented a separate action for negligence, apart

from the original injury, occurred within the three years preceding the date that Fletcher filed suit. *Id.* at 908. Noting that at least one FELA case applied a tolling principle until the tortious conduct ceased or until the last day that the employee was subjected to the conditions which caused the injury, the court held that the railroad's negligent conduct did not stop until it assigned Fletcher to lighter work, which was sometime after April 16, 1975. The court relied on *Fowkes v. Pennsylvania R.R. Co.*, 264 F.2d 397 (3d Cir.1959), in support of its holding.

Appellant argues that *Fletcher* is wrongly decided as a result of a misreading of the Third Circuit's decision in *Fowkes*. Appellant's position appears to be well taken, particularly in light of a Third Circuit decision more than thirty years later clarifying the *Fowkes* rule and identifying the outer limits of any tolling exception to the limitations period in a FELA case once a plaintiff has discovered the injury and its cause. *See Kichline, supra,* 800 F.2d at 356.[11] In *Kichline*, the plaintiff filed suit more than three years after learning that his pulmonary disease had been aggravated by exposure to diesel fumes in the workplace. *Id.* at 357. The court rejected Kichline's argument that his cause of action did not accrue until his retirement, when his exposure to the harmful substance finally ceased. *Id.* at 357. The court distinguished its earlier holding in *Fowkes* on the basis that the jury had found specifically that Fowkes was not aware of the condition which prompted the lawsuit for more than three years before filing. *Id.* at 359. Significantly, the *Kichline* court observed that "*Fowkes* can be fairly read as implying that had identification of the injury and its cause occurred before employment termi-

---

er has continuous duty to provide employers with a reasonably safe place to work).

11. Appellee argues that *Kichline* does not support appellant's claim on appeal because under *Kichline* an aggravation of an injury would not be time-barred. However, *Kichline* recognized a separate cause of action for aggravation apart from a claim of negligent assignment. *Id.* at 361. The *Kichline* court held that any claim for which plaintiff had knowledge of his injury pri-

or to three years before filing suit would be barred. *Id.* at 360. However, the court also held that a cause of action for aggravation which occurred within the limitations period would not necessarily be barred. *Id.* at 361. The court acknowledged the difficult burden that plaintiff would face in attempting to establish the extent of the injury occurring within the limitations period. *Id.*

nated, the discovery of the injury rather than the cessation of work would have marked the beginning of the limitations period." *Id.* The court specifically rejected the proposition that a different rule obtains for a continuing tort. *Id.* at 360. It also rejected the notion that *Fowkes* could be read to mean that the *Urie* discovery rule is inapplicable where employment and exposure to a dangerous condition continue after the employee-claimant becomes aware of the injury and its cause. *Id.* Rather, the court stated:

> We understand *Fowkes* to mean that continuing conduct of a defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy.

*Id.*[12]

Appellee also relies, as did the trial court, upon the D.C. Circuit case of *Page*. In a suit under the FTCA, relying on *Fletcher*, the *Page* court also held that when the tort involves a continuing injury, the limitations period begins to run when the tortious conduct ceases. *Page* involved a claim by a veteran for injuries resulting from drug treatment administered through the Veterans Administration between 1961 and 1980 which Page did not challenge until 1981. 234 U.S.App.D.C. at 333, 729 F.2d at 819. Rejecting the availability of the *Kubrick* rule, the court held that regardless of when plaintiff learned that he had reason to sue, the limitations period could not have expired on any malpractice claim within two years of his administrative presentation be-

cause of the involvement of the continuing injury. The court held that in such cases the cause of action accrues at the time the tortious conduct ceases. The court noted that since no single incident in the continuous chain of tortious activity can be identified realistically as the cause of significant harm, it is proper to regard the cumulative effect of the conduct as actionable. 234 U.S.App.D.C. at 335–36, 729 F.2d at 821–22. The court also relied upon *Gross v. United States*, 676 F.2d 295 (8th Cir.1982).[13]

We are not persuaded to follow the *Page* court's interpretation of the statute of limitations under the FTCA in this case which involves a question related to the FELA statute of limitations. *Page* departs from the *Urie* and *Kubrick* rules which have been utilized by the majority of the federal circuits in determining when a cause of action accrues under the FELA. To the extent that the *Page* court relied on *Fletcher*, for the reasons expressed above, we do not regard it as persuasive authority. Moreover, the *Page* rule would be at odds with the interpretation of the FELA by the more persuasive federal cases and with the purpose of the FELA statute of limitations. The purpose of the FELA statute of limitations is to guard against stale claims and to encourage the prompt presentation of claims. *See Kubrick, supra,* 444 U.S. at 117, 100 S.Ct. at 356. As the *Kichline* court observed:

> To further the remedial purposes of FELA, *Urie* granted an extension of time to a claimant who was unaware of his injury. Once discovery occurs, however, it becomes necessary to consider the oth-

**12.** While dismissing Kichline's main claim, the court remanded the case for further proceedings on any cause of action which he might have for aggravation occurring within the period of limitations. *Kichline, supra,* 800 F.2d at 361. Such claims would not be extinguished, and the plaintiff's awareness of the effects of the harmful conditions to which he was exposed would be relevant to his contributory negligence under the court's holding. *Id.* Other courts have refused to recognize that aggravation of a condition can be treated as a severable cause of action for statute of limitations purposes for the reason that it violates the spirit of the discovery rule. *See Fries, supra,* 909 F.2d at 1095–96; *Alexander v. Missouri Pacific R. Co.,* 827 S.W.2d

757, 759–60 (Mo.App.1992); *Frasure, supra,* 782 F.Supp. at 480–81.

**13.** In *Gross,* the court found that the Department of Agriculture had intentionally inflicted emotional distress upon the plaintiff by wrongfully denying him an opportunity to participate in certain federal programs over an extended period of time. The government contended that the FTCA statute of limitations barred suit unless it was tolled and that the statute of limitations began to run when plaintiff knew of his injury. The court rejected the government's *Kubrick* argument, holding that the rule in *Kubrick* does not apply in cases of continuing torts. *Gross, supra,* 676 F.2d at 300.

er side of the coin—the policy against presentation of stale claims. Although the continuing violation concept implies that the liability feature of the claim has not become stale, the same cannot be said of the damages phase. Proof relevant to reduction of damages which a defendant might be able to produce soon after the time the plaintiff discovers his injury may become difficult to obtain because of the passage of time if presentation of the claim is postponed. If the discovery rule is not enforced, damages can continue indefinitely, accumulating at the option of the claimant.

800 F.2d at 360. We are persuaded that the cases upon which we rely here provide the better interpretation of the statute of limitations rule contained in the FELA consistent with the Supreme Court's interpretation of the discovery rule in *Urie* and *Kubrick.* Therefore, we follow them.

Accordingly, we hold that the statute of limitations under the FELA commenced to run on the negligent assignment claim when appellee knew or should have known of his injury and that its possible cause was work-related. *Fries, supra,* 909 F.2d at 1095; *see Kichline, supra,* 800 F.2d at 360. The statute of limitations is not tolled beyond that date. *Fries,* 909 F.2d at 1095; *Kichline,* 800 F.2d at 360. However, we cannot say on this record when appellee should have known that his continual walking on ballast was aggravating his condition as opposed to any belief he might have had that it was his original injury and the recovery process associated with it which was causing his problem. Here, the original injury occurred on January 12, 1987. Appellee filed suit on March 2, 1990. Appellee must demonstrate that the period of limitations was tolled between January 12 and March 2, 1987, the latter date marking three years before he filed suit. Many facts must be weighed and inferences resolved by the factfinder in making that determination.[14] That is not our appellate function. *Capital Transit Co. v. Bingman,* 94 U.S.App.D.C. 75, 76–77, 212 F.2d

241, 242 (1954); *Trout v. Lehman,* 226 U.S.App.D.C. 357, 363, 702 F.2d 1094, 1100 (1983), *vacated on other grounds,* 465 U.S. 1056, 104 S.Ct. 1404, 79 L.Ed.2d 732 (1984). Therefore, we remand for further proceedings where the answer to that question can be established.

■ Relying on *Kichline, supra,* appellee also argues that all claims are not necessarily barred, specifically a claim for aggravation for the original injury occurring during an unbarred period. In *Kichline,* the court held that if plaintiff could establish a claim for damages for aggravation which occurred within the statutory period, then that particular claim would not be time-barred. 800 F.2d at 361; *see supra* note 11. The statute of limitations will have little meaning if a putative plaintiff can discover his injury and its cause, but prolong the period of limitations indefinitely by asserting a claim for aggravation. Some courts have rejected this notion in spite of *Kichline's* holding to the contrary. *See Alexander, supra* note 12, 827 S.W.2d at 759–60; *Frasure, supra,* 782 F.Supp. at 477. In this regard, the *Kichline* rule is contrary to the spirit and intent of the discovery rule as derived from *Urie* and *Kubrick* and applied generally in the FELA cases. Accordingly, we decline to follow the reasoning of *Kichline* that the aggravation of an employee's condition would be treated as a severable cause of action for statute of limitations purposes.

### III.

■ Appellant also argues that the trial court abused its discretion in admitting evidence of the time-barred medical malpractice claim. Appellant contends that the evidence was irrelevant to the negligent assignment claim, or alternatively, its probative value was outweighed by its unduly prejudicial effect. Although we reverse on other grounds, we address the issue because it may arise at any retrial. In a negligent assignment case, a plaintiff

---

**14.** In *Fowkes, supra,* the jury was asked whether plaintiff knew or should have known that the physical condition for which he claimed damages occurred before the critical date. 264 F.2d at 398. Such interrogatories are particularly helpful to the review of cases such as this one.

must prove that the railroad, through its agents, knew or should have known of the employee's diminished work capacity and nevertheless assigned him tasks which exposed him to an unreasonable risk of harm. *Fogg, supra*, 585 A.2d at 789. Medical personnel of an employer are its agents, and their knowledge of the employee's condition will place the railroad on notice of it. *Isgett v. Seaboard Coast Line R.R. Co.*, 332 F.Supp. 1127, 1141 (D.S.C.1971); *Mroz v. Dravo Corp.*, 293 F.Supp. 499, 508 (W.D.Pa.1968), *aff'd*, 429 F.2d 1156 (3d Cir. 1970). Evidence that Dr. Ceballos was an agent for the railroad, that he was aware of appellant's condition, and that he failed to take steps to cause Amtrak to restrict his work, was pertinent to appellee's proof of the negligent assignment claim. *See Fogg*, 585 A.2d at 789. Therefore, we find no abuse of discretion in the trial court's evidentiary ruling.[15]

For the foregoing reasons, we reverse and remand for further proceedings and for a new trial consistent with this opinion.

*Reversed and remanded.*

---

**15.** Prior to trial, having ruled that only the negligent assignment claim would proceed to trial, the trial court properly barred any reference to the inadequacy of the treatment that appellant's agent provided Krouse.