United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued December 11, 1998 Decided March 26, 1999 

 No. 97-7211

 Lillie May DeBerry, 

 Appellant

 v.

 First Government Mortgage and Investors Corporation, 

 Appellee

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 96cv00708)

 Mark L. Hessel argued the cause for appellant. With him 
on the briefs was Mark L. Leemon.

 Nathan I. Finkelstein argued the cause for appellee. With 
him on the brief was Laurie B. Horvitz.

 Before: Wald, Tatel and Garland, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Wald.


 Wald, Circuit Judge: Lillie May DeBerry appeals the 
order and judgment of the district court granting summary 
judgment to First Government Mortgage and Investors Cor-
poration ("First Government"). Ms. DeBerry brought an 
action alleging that First Government had violated the Dis-
trict of Columbia Consumer Protection Procedures Act 
("CPPA"), D.C. Code s 28-3904(r), by financing and refinanc-
ing her home with four mortgage loans containing unconscio-
nable terms or provisions.1 The district court granted sum-
mary judgment to First Government based solely on its 
finding that D.C. Code s 28-3904(r) did not apply to real 
estate mortgage finance transactions. Ms. DeBerry contests 
this finding, arguing that D.C. Code s 28-3904(r) does in fact 
apply to these transactions. Although neither of the parties 
requested certification of this issue of statutory interpretation 
to the District of Columbia Court of Appeals, see D.C. Code 
s 11-723, because of its importance to local commerce and 
because there is no decision by the highest court in the 
District of Columbia precisely on point, we have decided to 
certify it to that court. Ms. DeBerry also challenges the 
district court's dismissal--as barred by the statute of limita-
tions--of two of her claims based on loans made in 1991 and 
1992. We agree that such dismissal was improper and rein-
state these two claims contingent on a positive response by 
the District of Columbia Court of Appeals to the question 
certified here. Ms. DeBerry also challenges the grant of 
summary judgment to First Government with respect to her 
claim for common law infliction of emotional distress. Again, 
we agree with Ms. DeBerry that this grant was improper and 
accordingly reinstate the claim. Lastly, Ms. DeBerry argues 
that the district court improperly denied as moot her motion 
for attorneys' fees ordered by a magistrate judge to compen-
sate Ms. DeBerry for the necessity of filing a motion to 
compel discovery. We agree that the district court erred in 

__________
 1 The district court had jurisdiction over this diversity action 
based on 28 U.S.C. s 1332. Ms. DeBerry is a citizen of the District 
of Columbia; First Government is a Virginia corporation with its 
principal place of business in Maryland; and the amount in contro-
versy exceeds $75,000.


failing to rule on the question of attorneys' fees before 
disposing of the case and accordingly remand for further 
consideration.

 I. Background

 Ms. DeBerry inherited her home in 1981. In April of 1991, 
she borrowed $10,000 from First Government, secured by a 
deed of trust on her home. In August of 1992, First Govern-
ment refinanced the debt on Ms. DeBerry's home, loaning her 
$16,500. On April 13, 1995, Ms. DeBerry again refinanced 
her home by borrowing $21,000 from First Government. On 
April 27, 1995, Ms. DeBerry borrowed $27,500 from another 
lender, Bankers First Mortgage Company, Inc. ("Bankers 
First").2 On May 31, 1995, Ms. DeBerry entered into still 
another loan transaction with Bankers First for $39,000. In 
December of 1995, First Government made a final loan to Ms. 
DeBerry for $45,000.

 On April 15, 1996, Ms. DeBerry filed this action against 
First Government.3 Ms. DeBerry alleged that in financing 
the four loans, First Government had violated the Consumer 
Protection Procedures Act, D.C. Code ss 28-3901 to -3909. 
Specifically, Ms. DeBerry alleged a violation of D.C. Code 
s 28-3904(r)(1) and s 28-3904(r)(5). D.C. Code s 28-3904 
is entitled "Unlawful trade practices." D.C. Code 
s 28-3904(r)(1) and s 28-3904(r)(5) provide that it is a viola-
tion of the chapter to

 (r) make or enforce unconscionable terms or provisions 
 of sales or leases; in applying this subsection, consider-
 ation shall be given to the following, and other factors:

 (1) knowledge by the person at the time credit sales 
 are consummated that there was no reasonable proba-

__________
 2 Bankers First was also a defendant below, but was dismissed 
from the suit pursuant to a settlement agreement.

 3 Ms. DeBerry also sued six other defendants. Five of these 
defendants were dismissed from the suit pursuant to settlement 
agreements; one was dismissed on substantive grounds.

 bility of payment in full of the obligation by the 
 consumer;

 ...

 (5) that the person has knowingly taken advantage of 
 the inability of the consumer reasonably to protect his 
 interests by reasons of age, physical or mental infirmi-
 ties, ignorance, illiteracy, or inability to understand the 
 language of the agreement.... 

 Ms. DeBerry claims that for each of these loans, she was 
charged a large percentage of the amount borrowed in points 
and other fees. For example, with respect to the 1991 loan, 
Ms. DeBerry claims that she was charged $2,540 to borrow 
$10,000. Ms. DeBerry alleges that the loans made by First 
Government were unconscionable in that they constituted a 
pattern and practice of reverse redlining which she defines as 
"a predatory lending practice of making high cost loans to 
unsophisticated homeowners who have little money but do 
have substantial equity in their homes." Appellant's Br. at 3.

 On July 1, 1996, First Government filed a motion to dis-
miss. After hearing arguments on the motion, the district 
court dismissed Ms. DeBerry's claims relating to the loans 
made by First Government in 1991 and 1992 because the 
loans were made more than three years before she filed her 
complaint and, hence, were barred by the relevant statute of 
limitations. The court declined to dismiss the rest of the 
case.

 On July 9, 1997, the court assigned discovery matters to a 
magistrate judge. On July 31, 1997, Ms. DeBerry filed a 
motion to compel discovery and to grant sanctions. After a 
hearing on September 5, 1997, the magistrate judge issued an 
order directing First Government to respond to certain dis-
covery requests and to pay attorneys' fees and expenses 
associated with Ms. DeBerry's motion to compel. On Sep-
tember 23, 1997, First Government filed objections to the 
magistrate's order. Ms. DeBerry opposed the objections and 
subsequently filed a motion to set attorneys' fees.


 On October 29, 1997, the district court held a hearing on a 
summary judgment motion filed by First Government. The 
court thereafter issued an order granting summary judgment 
to First Government with respect to Ms. DeBerry's claim 
under the CPPA and dismissing all other pending motions as 
moot. The court also granted summary judgment to First 
Government with respect to Ms. DeBerry's claim for common 
law infliction of emotional distress, finding that the claim was 
dependent on the CPPA claims.

 The district court's decision to grant summary judgment 
with respect to Ms. DeBerry's CPPA claims was based solely 
on its finding that the CPPA did not apply to real estate 
mortgage finance transactions, which in turn relied heavily on 
a decision by the District of Columbia Court of Appeals, 
Owens v. Curtis, 432 A.2d 737 (D.C. 1981), where the court 
held that the CPPA did not apply to the sale of real estate. 
The district court found that Owens controlled this case and 
reasoned that if the CPPA did not apply to the sale of real 
estate, a fortiori it did not apply to real estate mortgage 
finance transactions. In granting summary judgment, the 
district court made clear that the sole and exclusive basis for 
its ruling was that the CPPA did not apply and that otherwise 
there were a number of disputed facts deserving of a trial.4

 II. Discussion

 A.Applicability of D.C. Code s 28-3904(r)

 The issue of whether D.C. Code s 28-3904(r) applies to 
mortgage finance transactions has not been the subject of a 
ruling by the District of Columbia Court of Appeals, to whom 
we would ordinarily look for guidance on its construction. 
See Schleier v. Kaiser Found. Health Plan of the Mid-
Atlantic States, Inc., 876 F.2d 174, 180 (D.C. Cir. 1989) (per 
curiam). That court has, however, applied without comment 

__________
 4 Because the district court specifically found that the case would 
be deserving of trial if the CPPA did in fact apply to mortgage 
finance transactions, we do not address First Government's efforts 
on appeal to argue the merits of Ms. DeBerry's claims.

another subsection of D.C. Code s 28-3904, (e), to a mort-
gage finance transaction and in the same case rejected a 
claim under D.C. Code s 28-3904(r) on the sole ground that 
the facts in the case did not support the claim (or, in other 
words, not because D.C. Code s 28-3904(r) did not apply). 
See Osbourne v. Capital City Mortgage Corp., 667 A.2d 1321, 
1330 & 1331 n.13 (D.C. 1995). However, First Government 
argues that while real estate mortgage finance transactions 
may be covered under D.C. Code s 28-3904(e), which pro-
vides that it is an unlawful trade practice to "misrepresent as 
to a material fact which has a tendency to mislead," they are 
not covered under D.C. Code s 28-3904(r), which provides 
that it is an unlawful trade practice to "make or enforce 
unconscionable terms or provisions of sales or leases...." 
First Government makes this argument on the basis of the 
"sales or leases" language which appears in D.C. Code 
s 28-3904(r). Specifically, First Government argues that one 
cannot sell or lease a mortgage finance and, accordingly, that 
such transactions are not contemplated under D.C. Code 
s 28-3904(r).

 To assess the quality of this argument, we look to the text 
and structure of the CPPA as a whole. The CPPA is, as the 
District of Columbia Court of Appeals has noted, "to say the 
least, an ambitious piece of legislation which seeks to prohibit 
a long list of 'unlawful trade practices.' " Howard v. Riggs 
National Bank, 432 A.2d 701, 708 (D.C. 1981). Two sections 
of the CPPA, in particular, are relevant to our inquiry. The 
first is entitled "Definitions and purposes." D.C. Code 
s 28-3901. This section indicates that it applies to the entire 
CPPA, see D.C. Code s 28-3901(a), and provides, inter alia, 
the following. A "trade practice" is defined as "any act which 
does or would create, alter, repair, furnish, make available, 
provide information about, or, directly or indirectly, solicit or 
offer for or effectuate a sale, lease or transfer, of consumer 
goods or services." D.C. Code s 28-3901(a)(6). "Goods and 
services" is defined as "any and all parts of the economic 
output of society, at any stage or related or necessary point in 
the economic process, and includes consumer credit, franchis-


es, business opportunities, real estate transactions, and con-
sumer services of all types." D.C. Code s 28-3901(a)(7).

 The second section relevant to our inquiry is entitled 
"Unlawful trade practices." D.C. Code s 28-3904. Under 
this section are listed a number of occurrences that constitute 
unlawful trade practices. For example, it is an unlawful 
trade practice to represent that goods are original or new if 
in fact they are used, see D.C. Code s 28-3904(c); to falsely 
state the reasons for offering or supplying goods or services 
at sale or discount prices, see D.C. Code s 28-3904(l ); to 
harass or threaten a consumer with any act other than legal 
process, see D.C. Code s 28-3904(m); to misrepresent the 
authority of a salesman, representative or agent to negotiate 
the final terms of a transaction, see D.C. Code s 28-3904(v); 
and so forth. As mentioned above, two other unlawful trade 
practices listed under D.C. Code s 28-3904 are to misrepre-
sent as to a material fact which has a tendency to mislead, see 
D.C. Code s 28-3904(e), and to make or enforce unconsciona-
ble terms or provisions of sales or leases, see D.C. Code 
s 28-3904(r). First Government would have us draw a dis-
tinction between the unlawful trade practice listed in D.C. 
Code s 28-3904(e), which the District of Columbia Court of 
Appeals has applied to a real estate mortgage transaction, 
and the unlawful trade practice listed in D.C. Code 
s 28-3904(r), as to which it has not yet ruled regarding real 
estate mortgage transactions, solely because of the "sales or 
leases" language that appears in D.C. Code s 28-3904(r).

 Of course, the reason given by the district court for con-
cluding that D.C. Code s 28-3904(r) did not apply to real 
estate mortgage finance transactions was that the local courts 
had construed D.C. Code s 28-3904 as not applying to sale of 
real estate and that a fortiori it did not apply to mortgage 
finance transactions. However, the district court was mistak-
en as to the state of local law with respect to real estate. In 
Owens v. Curtis, 432 A.2d 737, 739 (D.C. 1981), the court held 
that the CPPA did not apply to the sale of real estate. In 
response to this decision, the Council of the District of 
Columbia ("D.C. Council") amended the definitional section of 
the CPPA explicitly to include "real estate transactions" as an 


example of a "good or service." See Report of the Council of 
the District of Columbia, Committee on Consumer and Regu-
latory Affairs, on Bill 8-111 and Bill 8-271, at 3-4 (1990) 
("1990 Report") (noting that the Committee was expanding 
the definition of " 'goods and services' to cover the holding in 
the matter of Owen[s]"); see also Schiff v. American Ass'n of 
Retired Persons, 697 A.2d 1193, 1197 & n.10 (1997) (noting 
that the 1990 Amendment was "adopted with the express 
purpose of reversing the holding" of Owens).

 The district court below was under the misapprehension 
that Owens was still good law; its denial of Ms. DeBerry's 
claim on that basis is accordingly unpersuasive. Despite the 
foregoing, however, First Government argues that while D.C. 
Code s 28-3904(r) may now--post-Owens--apply to the sale 
of real estate, it still does not apply to a real estate mortgage 
finance transaction because one cannot "sell" or "lease" a 
mortgage refinance and D.C. Code s 28-3904(r) specifically 
mentions "sales or leases."

 Ms. DeBerry in turn argues that a careful reading of the 
statute reveals serious impediments to the success of First 
Government's argument. D.C. Code s 28-3904(r) provides 
that it is an unlawful trade practice to "make or enforce 
unconscionable terms or provisions of sales or leases." To 
determine whether real estate mortgages are covered under 
this provision, a reader asks, "sale or lease of what?" D.C. 
Code s 28-3904(r) does not itself provide the answer to this 
question, but the reader may go back to the definitional 
section--which applies to all of the subsections in D.C. Code 
s 28-3904--to seek guidance. Under the definition of a 
"trade practice," it provides that a trade practice is any act 
relating to the "sale, lease or transfer, of consumer goods or 
services." D.C. Code s 28-3901(a)(6) (emphasis added); see 
also id. s 28-3901(a)(2) (defining "consumer" to include a 
"person who does or would purchase, lease (from), or receive 
consumer goods or services" (emphasis added); id. 
s 28-3901(a)(3) (defining a "merchant" as a "person who does 
or would sell, lease (to), or transfer, either directly or indi-
rectly, consumer goods or services, or a person who does or 
would supply the goods or services which are or would be the 

subject matter of a trade practice" (emphasis added). The 
reader may ask, "well, what does goods and services include?" 
"Goods and services" is defined in the very next subsection: 
"goods and services" means "any and all parts of the econom-
ic output of society, at any stage or related or necessary point 
in the economic process, and includes consumer credit, fran-
chises, business opportunities, real estate transactions, and 
consumer services of all types." D.C. Code s 28-3901(a)(7) 
(emphases added).5 Considering that a mortgage finance 
constitutes a sale of consumer credit and consumer services 
as well as qualifying as a real estate transaction, the reader, 
turning back to D.C. Code s 28-3904(r), may conclude that it 
is an unlawful trade practice to make or enforce unconsciona-
ble terms or provisions of sales or leases of goods and 
services, including consumer credit, consumer services, and 
real estate transactions; or, in other words, that D.C. Code 
s 28-3904(r) applies to real estate mortgage transactions.6

__________
 5 This interpretive approach is consistent with that employed by 
the District of Columbia Court of Appeals. In Owens v. Curtis, 432 
A.2d 737 (D.C. 1981), the court interpreted the applicable scope of 
D.C. Code ss 28-3904(e) and (f). Although neither section men-
tioned the words "trade practice" or "goods and services"--just as 
D.C. Code s 28-3904(r) does not use those words--the Court 
nonetheless determined the applicable scope of those provisions 
with reference to the definitions of those terms found in D.C. Code 
s 28-3901. In particular, it read the definitions contained D.C. 
Code ss 28-3901(a)(6) and (7) in tandem. See id. at 738-39 & n.2. 
(As previously noted, Owens was overruled by statute for other 
reasons).

 6 Apart from the text and structure of the CPPA, the legislative 
history provides only general background for interpretation of D.C. 
Code s 28-3904(r). There is nothing in the general history to 
suggest that D.C. Code s 28-3904(r) was intended to operate any 
differently than any other unfair trade practice under D.C. Code 
s 28-3904, and the specific history of (r) indicates only that its 
purpose was to ensure that "all merchants do not ... (r) make 
contracts so unfair as to be 'unconscionable.' " Report of the 
Council of the District of Columbia, Committee on Public Services 
and Consumer Affairs, on Bill 1-253, at 14, 17-18 (1976) ("1976 
Report") (emphasis added).

 However, First Government would limit "sale," as it ap-
pears in D.C. Code s 28-3904(r), to its most narrow and 
traditional of senses, that is, X pays Y a certain amount to 
purchase a certain good. First Government thus argues that 
because it did not sell the property which was the basis of the 
mortgage refinance, it did not in fact "sell" anything to Ms. 
DeBerry at all. Ms. DeBerry replies that such is an oversim-
plification, as consumer transactions are often more complex 
than X paying Y for a certain good. Take as an example the 
common situation where X buys a good from Y but ultimately 
pays Z who has financed the deal and has security in the 
chattel in case of default. Has Z "sold" anything to X in this 
scenario? Ms. DeBerry argues that the CPPA assumes that 
Z has sold a good or service to X by extending consumer 
credit and hence that the transaction between Z and X would 
be covered by D.C. Code s 28-3904(r).7 See Jackson v. 
Culinary School of Washington, 788 F. Supp. 1233, 1253 
(D.D.C. 1992) (applying D.C. Code s 28-3904(r) to extension 
of consumer credit, holding that a "merchant includes one 
who sells consumer credit as well as those entities which take 
an assignment of the credit account and continue the exten-
sion of credit to the consumer"); rev'd on other grounds 27 
F.3d 573 (D.C. Cir. 1994); Lawson v. Nationwide Mortgage 
Corp., 628 F. Supp. 804, 807 (D.D.C. 1986) (holding that 
mortgage refinancing transaction was covered by the CPPA 

__________
 7 The legislative history of the 1990 Amendment bears out this 
thesis.

 The definition of "goods and services" is amended to include all 
 residential real estate transactions. This amendment was ex-
 panded to address problems that have arisen in recent years. 
 Given their complexity, it is hard to discern when a real estate 
 transaction may be considered a sale. It is the Committee's 
 belief that the inclusion of the term "transaction" will give the 
 court sufficient range to discern whether a transaction is a sale 
 or a lease arrangement. Furthermore, as the statute presently 
 prohibits application to landlord-tenant issues, it is felt that the 
 use of the term "transaction" has been given specific parame-
 ters for court interpretation.

1990 Report, at 3.

because the CPPA "specifically encompasses such 'consumer 
credit' transactions").8

 Ms. DeBerry's interpretation of D.C. Code s 28-3904(r), in 
light of the text and structure of the CPPA as a whole, does 
not lack persuasive force, but because the local courts have 
not ruled directly on this issue and because the answer will 
have significant effects on District of Columbia mortgage 
finance practice, we have decided to save the issue for the 
District of Columbia Court of Appeals. According, we certify 
the following question pursuant to D.C. Code s 11-723:

 Does D.C. Code s 28-3904(r) apply to real estate 
 mortgage finance transactions?

Appended to this certification are the briefs and portions of 
the trial court record provided by the parties to this appeal. 
In addition, we shall provide the District of Columbia Court 
of Appeals with any other portion of the trial court record it 
might desire to have in order to answer the certified question.

 B.Statute of Limitations

 Ms. DeBerry argues that the district court erred in dis-
missing her claims relating to loans made in 1991 and 1992. 
Ms. DeBerry filed her complaint in 1996 and, hence, these 
loans, if considered separately, are on their faces barred by 
the relevant statute of limitations. See D.C. Code 
s 12-301(8) (limitation is three years where not otherwise 
specifically prescribed). However, Ms. DeBerry argues that 
the district court ought not to have dismissed these claims 
based solely on the pleadings, that is, before she had an 
opportunity to conduct discovery. While it might be difficult 
for Ms. DeBerry to demonstrate that the 1991 and 1992 loans 
are not to be viewed as separate incidents vulnerable to the 
statute of limitations, she should have been afforded an 

__________
 8 See also 1976 Report, at 13-14 (defining "goods and services" as 
"the subject matter of any trade practice, including any action 
normally considered only incidental to the supply of goods and 
services to consumers") (emphasis added).


opportunity to do so.9 Accordingly, we find that the district 
court erred in dismissing the claims before appropriate dis-
covery could be conducted. The reinstatement of these 
claims will of course be held in abeyance until the question of 
whether D.C. Code s 28-3904(r) applies to real estate mort-
gage transactions has been resolved by the District of Colum-
bia Court of Appeals.

 C. Claim for Infliction of Emotional Distress

 Ms. DeBerry challenges the grant of summary judgment 
for First Government with respect to her claim for common 
law infliction of emotional distress. The only reason the 
district court gave for its dismissal was that the claim was 
dependent on the CPPA claims and that the dismissal of the 
latter therefore required the dismissal of the former. Dis-
missal on this ground was incorrect. See Saunders v. Nema-
ti, 580 A.2d 660, 661 (D.C. 1990). Accordingly, we reinstate 
Ms. DeBerry's claim for common law infliction of emotional 
distress and remand it for reconsideration by the district 
court.

__________
 9 For example, Ms. DeBerry may be able to demonstrate that she 
only realized First Government's alleged scheme to strip equity 
from her home after a number of the loans had been made and 
hence that the 1991 and 1992 loans were not barred pursuant to the 
"discovery rule." See Farris v. Compton, 652 A.2d 49 (D.C. 1994). 
However, a second argument against dismissal based on a "continu-
ing tort" theory appears to be unavailable. Ms. DeBerry relied on 
this court's decision in Page v. United States, 729 F.2d 818, 821 
(D.C. Cir. 1984) ("It is well-settled that '[w]hen a tort involves 
continuing injury, the cause of action accrues ... at the time the 
tortious conduct ceases' ") (footnote omitted), to argue that First 
Government's actions constituted a continuing tort and hence that 
the 1991 and 1992 loans were not untimely. However, the District 
of Columbia Court of Appeals has specifically rejected the reason-
ing in Page, see National R.R. Passenger Corp. v. Krouse, 627 A.2d 
489, 497-98 (D.C. 1993), and has held that "the policy disfavoring 
stale claims makes application of the 'continuous tort' doctrine 
inappropriate." Wallace v. Skadden, Arps, Slate, Meagher & Flom, 
715 A.2d 873, 883 (D.C. 1998). Accordingly, the "continuing tort" 
argument appears to be unavailable under District of Columbia law.

 D.Attorneys' Fees

 Finally, Ms. DeBerry argues that a court order to pay 
attorneys' fees with respect to discovery issues is independent 
of the merits of the underlying case and, hence, that the 
district court erred in failing to rule on the magistrate's order 
of fees before disposing of the case. We agree and, accord-
ingly, remand the issue of attorneys' fees with instructions 
that the district court rule on the issue irrespective of the 
outcome of the case on the merits.

 III. Conclusion

 For the foregoing reasons, we reverse the district court's 
dismissal of Ms. DeBerry's claim for common law infliction of 
emotional distress and remand for further consideration; we 
reinstate Ms. DeBerry's claims relating to loans made in 1991 
and 1992, contingent on the District of Columbia Court of 
Appeals' affirmative response to the question certified; and 
we reverse the district court's dismissal of the order of 
attorneys' fees and remand with instructions to rule on the 
order irrespective of the outcome of the case on the merits. 
Finally, we certify the question of whether D.C. Code 
s 28-3904(r) applies to real estate mortgage finance transac-
tions to the District of Columbia Court of Appeals for resolu-
tion.

 So ordered.