# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1127

_____

|  |  |  |
|---|---|---|
| Marion Alfred Lovell, II, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Larry Norris, Director, Arkansas | * | District of Arkansas. |
| Department of Correction, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 14, 1999

Filed: December 10, 1999

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
BOGUE,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Marion Lovell was convicted in state court of possessing a controlled substance, and his conviction and sentence were affirmed on appeal. When the trial court denied his petition for post-conviction relief, Mr. Lovell filed a timely notice of appeal and requested a transcript of the relevant proceedings. Under the applicable Arkansas law,

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

Mr. Lovell then had the duty to forward the relevant record to the Arkansas Supreme Court within 90 days. *See* Ark. R. Crim. App. P. 4(a), Ark. R. Civ. App. P. 5(a). About two months after he filed his notice of appeal, Mr. Lovell moved in the trial court for an extension of time to tender his record, *see* Ark. R. Civ. App. P. 5(b), but apparently the motion was never acted on. More than six months later, well after the time allotted to file his record had elapsed, and beyond the date to which the trial court could have in any event extended the time to tender the record, Mr. Lovell sought a writ of mandamus from the Arkansas Supreme Court, requesting that it order the appropriate circuit clerk to submit the record. The record was finally produced about two weeks thereafter.

When Mr. Lovell then petitioned the Arkansas Supreme Court for a belated appeal, *see* Ark. R. Crim. App. P. 2(e), the court denied his motion. In doing so, the court, treating the motion as one for a rule on the clerk to lodge the record, explained that litigants "bear responsibility for conforming to the rules of procedure or demonstrating a good cause for not doing so," *Lovell v. State*, Cr. No. 96-301, at 2 (Ark. S. Ct. May 6, 1996) (*per curiam*) (not published). Since Mr. Lovell did not file an affidavit explaining why he had a "good reason" for tendering his record late, *see* Ark. R. Crim. App. P. 2(e), the court refused him permission to proceed. Mr. Lovell then filed the present petition under 28 U.S.C. § 2254.

The state of Arkansas argued to the district court[2] that Mr. Lovell had defaulted on the claims raised in his petition because he had failed to perfect his appeal from the trial court's denial of post-conviction relief. The district court agreed and dismissed the petition. We affirm.

---

[2]The Honorable Jerry W. Caveneau, United States Magistrate Judge for the Eastern District of Arkansas, sitting by consent of the parties. *See* 28 U.S.C. § 636(c)(1), Fed. R. Civ. P. 73(a).

I.

Mr. Lovell maintains, first, that the default with which he is charged should not bar his petition here because it did not result from an adequate and independent state ground for rejecting his appeal. *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *see also Reed v. Ross*, 468 U.S. 1, 8 n.5, 11 (1984). He asserts that the rule that the Arkansas Supreme Court applied to him in denying his motion for a belated appeal is not " 'strictly or regularly followed,' " *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982), quoting *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964).

The only evidence that Mr. Lovell adduces in support of this last proposition comes from a dissenting opinion in *Bragg v. State*, 297 Ark. 348, 760 S.W.2d 878 (1988) (*per curiam*), in which a justice of the Arkansas Supreme Court asserted that the procedures for preparing a record for *pro se* appellants varied widely from county to county in Arkansas: In some counties, he said, transcripts are prepared whenever an indigent party files a notice of appeal, in others the circuit judge informs the clerk that an appellant is indigent whereupon a record is prepared, and in still others the appellant must personally contact the court reporter before a record will be prepared. *See id.*, 297 Ark. at 351, 760 S.W.2d at 879-80 (Hickman, J., dissenting).

We do not know, first of all, whether the foregoing summary accurately describes the current Arkansas practice, and there is nothing in the record about it one way or the other. More fundamentally, however, we believe that the variation in practice outlined is beside the point. It is the regularity with which the Arkansas Supreme Court applies some relevant rule that is at stake here, and the relevant rule is Ark. R. Crim. App. P. 2(e), which allows the Arkansas Supreme Court to proceed to adjudicate an appeal if a record is tendered late "when a good reason ... is shown by affidavit." This is a grace that an appellant may request by moving for a rule on the clerk to file the record. *See* Ark. S. Ct. R. 2-2. In the present case, however, Mr. Lovell offered no reason whatever to the Arkansas Supreme Court for his failure to lodge his record on time, and so the court's dismissal of his motion was quite

obviously in keeping with its rules governing the timeliness of appeals.  As far as we can tell, the Arkansas Supreme Court consistently applies its rule that an appellant must offer a good reason before he or she can file a record out of time, and Mr. Lovell does not direct our attention to any case that would indicate the contrary.

Mr. Lovell also asserts that the state's disposition of his appeal did not furnish an adequate ground on which to base a default because the Arkansas Supreme Court misapplied its own rule to him.  He maintains that Ark. R. Crim. App. P. 2(c)(2) requires only that an indigent appellant include a request for a transcript in his or her notice of appeal in order to be entitled to have the appeal proceed.  The short answer to this argument is that the Arkansas Supreme Court gets to interpret its own rules, and even if it does so "wrongly," an order based on such an interpretation can furnish the basis for a default for habeas purposes, especially if the "mistake" is consistently made. Besides, although our agreement is beside the point, we see no error whatever in the Arkansas Supreme Court's interpretation and application of the relevant rules.

## II.

Mr. Lovell also asks us to excuse his default because the rule that resulted in his appeal being dismissed is designed to frustrate, or has the effect of frustrating, the assertion of federal rights, and thus is not adequate to bar habeas review.  *See James v. Kentucky*, 466 U.S. 341, 348 (1984), and *Michel v. Louisiana*, 350 U.S. 91, 93 (1955).  The legal principle that Mr. Lovell invokes is, we recognize, an unexceptionable one, but we see no occasion to apply it to the facts of this case.  There is nothing inherently unreasonable in requiring Mr. Lovell to include in his petition, or in its accompanying papers, a sworn statement outlining why he believes that he had good reason for his delay in lodging the record.  We see nothing, moreover, in the sum of the relevant Arkansas procedural rules that renders them so burdensome as to make them inadequate for habeas purposes.  The Arkansas procedure simply has not raised "an insuperable barrier," *Michel*, 350 U.S. at 93, to the vindication of federal rights.

III.

Mr. Lovell's final argument for relief from his default is that even if the state rule is adequate, he is excused because it was the state, through its inaction, that caused the record to be filed untimely. He urges us to hold that the circuit clerk's or court reporter's failure to provide the record was an "objective factor external to the defense" that "impeded [his] efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See Dorman v. Wainwright*, 798 F.2d 1358, 1370 (11th Cir. 1986), *cert. denied*, 480 U.S. 951 (1987).

It may well be true that if the circuit clerk or court reporter had timely tendered the record, Mr. Lovell would not have defaulted on his claim. But we do not think that this is enough to make the clerk's or court reporter's inactivity the cause, as that term is used in habeas cases, of Mr. Lovell's default. Rather, we believe that Mr. Lovell caused his own default by not pursuing the remedies that Arkansas law afforded him. The state suggests, for instance, that Mr. Lovell could have filed a partial record, if any, and moved the Arkansas Supreme Court for an extension of time to lodge his record on account of unavoidable casualty. *See Yent v. State*, 279 Ark. 268, 269, 650 S.W.2d 577, 578 (1983) (*per curiam*), and *In re Estate of Wilkinson*, 311 Ark. 311, 312, 843 S.W.2d 316, 317 (1992) (*per curiam*).

It seems to us that this method of obtaining permission to lodge a record beyond the seven months allowed by the applicable rule is intended for use only in civil cases in Arkansas. We conclude, however, that the Arkansas Supreme Court would allow a record to be lodged tardily in a criminal case if it were shown that the delay was due to the dereliction of the circuit clerk or the court reporter. We believe that if Mr. Lovell had attached an affidavit to his motion for a belated appeal that stated that his record was tardy because the relevant court officials failed to do their duty, the Arkansas Supreme Court would have allowed the appeal to proceed (if, of course, it satisfied itself that the facts stated in the affidavit were true). In other words, we think that this kind of failure of the system would be a "good reason" to allow the appeal to proceed

under Ark. R. Crim. App. P. 2(e). Mr. Lovell directs our attention to no case to the contrary. He does point to various Arkansas cases that he asserts stand for the proposition that a circuit clerk or court reporter "can <u>never</u> be held to blame for the failure to timely file the record with the Arkansas Supreme Court," but we think that this overstates the matter considerably.

It is true that some Arkansas cases contain rather broad language about the duties of lawyers and litigants with respect to perfecting an appeal. For instance, in *Finley v. State*, 281 Ark. 38, 39, 661 S.W.2d 358, 359 (1983) (*per curiam*), the court asserted that "[i]t is the duty of counsel, not the judge, not the clerk, not the reporter, to perfect an appeal." But the holding in that case was based on the court's conclusion that it was counsel's fault that an order had not been entered on time, and the court offered the instructive comment that "[i]t is not often the case [that] an official refuses to perform a duty; invariably ... counsel expects the officials to do the work of counsel." *Id.* These words carry the implication that if an official had in fact refused to do his or her duty, the court would have allowed the record to be lodged tardily. Other similar cases reveal that behind the Arkansas Supreme Court's refusal to allow an appeal to proceed lay some failure of a *pro se* appellant or counsel to follow the rules or act diligently to perfect an appeal. *See*, *e.g.*, *Bragg v. State*, 297 Ark. 348, 350, 760 S.W.2d 878, 879 (1988) (*per curiam*).

Further evidence that the failure of court officials or employees to perform their duties would constitute a "good reason" under Ark. R. Crim. App. P. Crim. 2(e) to allow a late tender of a record is provided in *Porter v. State*, 287 Ark. 359, 360, 698 S.W.2d 801, 802 (1985) (*per curiam*). In that case, the court granted a belated appeal when the circuit clerk failed to notify a petitioner that his post-conviction petition had been denied, causing the petitioner to file his notice of appeal out of time. We see no relevant difference between *Porter* and the present case. The difficulty here, however, is that Mr. Lovell did not explain his circumstances to the Arkansas Supreme Court in an affidavit accompanying his petition. His petition was denied because he offered no

reason at all for his tardiness, not because his reason was not a good one on the merits. The court did not reach the merits because it had none before it. *See also Chiasson v. State*, 304 Ark. 110, 111, 798 S.W.2d 927, 927 (1990) (*per curiam*).

Our case is not like *Buffalo v. Sunn*, 854 F.2d 1158, 1165-66 (9th Cir. 1988), where the court suggested that cause to excuse a default would be found if a *pro se* petitioner were unable to meet a deadline because he was in lockdown. Nor is it like *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990), where prison employees allegedly interfered with the petitioner's access to administrative remedies. We think that it is important to emphasize that although Mr. Lovell in his brief alludes obliquely to the fact that he was an incarcerated, indigent defendant, he does not maintain that it was impracticable for him to comply with Arkansas law. Indeed, some nine months after his notice of appeal was filed, he attempted to file a flurry of petitions in the Arkansas Supreme Court, asking for a writ of certiorari to the trial court, a belated appeal, or a mandamus to the relevant court reporter. None of these petitions was filed because Mr. Lovell had failed to comply with certain procedural requirements, and they were all returned to him. But the point is that Mr. Lovell's range of action seems in no way to have been hampered by the fact that he was incarcerated and indigent.

## IV.

In short, we believe that Arkansas law afforded Mr. Lovell the means to prosecute his appeal, and he failed to avail himself of them. Since he caused his own default, the default cannot be excused. Because the procedural requirements imposed on Mr. Lovell were reasonable, we reject as well Mr. Lovell's claim that he was not afforded due process in his effort to appeal his case.

For the reasons indicated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.