**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 21 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DENNIS DUANE MATSON,

Plaintiff-Appellant,

v.

BURLINGTON NORTHERN SANTA
FE RAILROAD, a corporation,

Defendant-Appellee.

No. 00-1045

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-B-1207)

---

Richard J. Dinsmore, Omaha, Nebraska, for the appellant.

Alan Epstein (Frederick T. Martinez with him on the brief), of Hall & Evans,
L.L.C., Denver, Colorado, for the appellee.

---

Before **BRISCOE, BALDOCK**, and **MURPHY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiff Dennis Matson appeals the entry of summary judgment in favor of

his former employer, defendant Burlington Northern Santa Fe Railroad (BNSF).

The district court concluded that Matson's claims under the Federal Employers'

Liability Act (FELA), 45 U.S.C. §§ 51-60, and the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701-20703 (formerly known as the Boiler Inspection Act, 45 U.S.C. §§ 22-34), were barred by the statute of limitations. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Matson worked for BNSF as a locomotive brakeman and conductor from 1974 to 1998. At an appointment with a doctor on February 22, 1995, he complained of multiple ailments, including what he described as chronic lower back pain. On April 21, 1995, he returned for a second visit and reported a significant change in the amount of back pain he was experiencing. Specifically, he stated that the pain radiated to his right thigh and increased whenever he sat down. Further, Matson shared his belief that the pain was "due to his work on the railroad." Appellant's App. at 101. He and his doctor then discussed "the relation of some of these symptoms or all of these symptoms possibly to some factors of working on the railroad," including Matson's irregular work schedule, his positioning on the locomotive and the length of time he spent in that position. Id. at 88.

Seeking to avoid any invasive treatment for his back condition, Matson began seeing a chiropractor on May 26, 1995. The chiropractor gave Matson a work status form on June 1, 1995, which stated that he was suffering from work-

2

related "repetitive vibration causing degenerative joint dysfunction." Id. at 76. It was later determined that Matson had a herniated and degenerated disc in his lower back, allegedly caused by years of exposure to "whole-body vibrations" while riding on BNSF's locomotives. Id. at 16.

Matson filed this action on May 29, 1998, alleging that BNSF was liable under FELA and LIA for his back injury. Following discovery, BNSF moved for summary judgment, asserting that both claims were barred by FELA's three-year statute of limitations, 45 U.S.C. § 56, because Matson knew or should have known prior to May 29, 1995, that his back injury was work-related. The district court agreed and granted the motion. The district court also rejected Matson's argument that it should apply the continuing tort doctrine and toll the statute of limitations.

Matson timely appeals, arguing (1) that the district court erred in granting summary judgment because there is a factual dispute as to when he learned that his back injury was caused by the repetitive motion of BNSF's locomotives and (2) that even if he knew or should have known the cause of his injury more than three years before filing suit, the district court erred in failing to toll the statute of limitations under the continuing tort doctrine.

II.

We review a district court order granting summary judgment de novo.

3

Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Cooperman, 214 F.3d at 1164.

III.

FELA and LIA are "remedial and humanitarian" statutes that impose two separate types of liability to protect the safety of railroad employees. King v. S. Pac. Transp. Co., 855 F.2d 1485, 1488 n.1 (10th Cir. 1988). FELA permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees. Feichko v. Denver & Rio Grande W. R.R. Co., 213 F.3d 586, 591-92 (10th Cir. 2000). LIA, on the other hand, imposes "an absolute duty" on railroad carriers to ensure that their locomotives are both properly maintained and safe to operate. King, 855 F.2d at 1488. Because LIA does not create an independent cause of action, such a claim must be brought under FELA. Feichko, 213 F.3d at 588 n.4.

A.

To maintain a claim under FELA, the plaintiff must allege and prove that

the action was filed "within three years from the day the cause of action accrued." 45 U.S.C. § 56; see Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 274 n.7 (10th Cir. 1955). FELA does not define when a cause of action accrues, but it is often clear from the nature of the injury when the statute of limitations starts to run. For example, "[c]ases which involve a traumatic injury or a single breach of duty and an immediately manifest injury pose little difficulty in determining the commencement of the limitations period." Nat'l R.R. Passenger Corp. v. Krouse, 627 A.2d 489, 493-94 (D.C. Cir. 1993).

The accrual issue, however, is "[m]ore problematic [in] cases involving latent injuries which cannot be discovered immediately or those where the injury has an indefinite onset and progresses over many years unnoticed." Id. at 494. To avoid the harshness of applying a strict limitations period that could theoretically require a plaintiff to file suit before a latent injury manifested itself, the Supreme Court has crafted a "discovery rule" for determining when a federal cause of action accrues. See United States v. Kubrick, 444 U.S. 111, 121-23 (1979); Urie v. Thompson, 337 U.S. 163, 168-71 (1949). Under this rule, a federal "statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Indus. Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994). This rule imposes on plaintiffs an affirmative

5

duty to exercise reasonable diligence and investigate the cause of a known injury. See Arvayo v. United States, 766 F.2d 1416, 1422 (10th Cir. 1985). Although this court has not addressed whether the discovery rule applies in the context of a FELA action, several circuits have applied the rule in FELA cases. See Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 814 (6th Cir. 1996); Fries v. Chicago & N.W. Transp. Co., 909 F.2d 1092, 1095 (7th Cir. 1990); Albert v. Maine Cent. R.R. Co., 905 F.2d 541, 544 (1st Cir. 1990); Townley v. Norfolk & W. Ry. Co., 887 F.2d 498, 501 (4th Cir. 1989); Kichline v. Consol. Rail Corp., 800 F.2d 356, 359 (3d Cir. 1986); Dubose v. Kansas City S. Ry. Co., 729 F.2d 1026, 1030 (5th Cir. 1984).

The district court applied the discovery rule in this case and concluded that Matson's claims were time-barred because his claims accrued more than three years before he filed suit on May 29, 1998. Specifically, the district court held that Matson's claims accrued no later than April 21, 1995, when he and his doctor discussed the potential connection between his back pain and his employment with BNSF. As an alternative basis for granting summary judgment, the district court also noted that on an insurance form dated May 26, 1995, Matson stated that his back injury was caused by "repetitive motion" while on duty with BNSF.

According to Matson, the district court should not have relied on the April 21, 1995, conversation as a trigger for FELA's statute of limitations because his

doctor never told him that the repetitive motion of BNSF's locomotives could be a source of his pain. Instead, Matson argues, his claims did not accrue until June 1, 1995 – the date his chiropractor diagnosed the repetitive vibrations as the specific cause of his back injury. He also argues there is a factual dispute as to whether he knew on June 1, 1995, that the vibrations were the cause of his degenerative back condition. More specifically, he admits that the insurance form on which he stated that his back injury was caused by work-related repetitive motion is dated May 26, 1995, but he asserts that he completed the form after June 1, 1995, and simply back-dated it to cover his first chiropractic appointment. As further evidence of a factual dispute, Matson points to a form he completed for BNSF's medical department on May 30, 1995, on which he stated that the cause of his back injury was "unknown." Appellant's App. at 40.

By focusing exclusively on when he learned that the repetitive vibrations of BNSF's locomotives allegedly caused his back injury, Matson attempts to incorporate a "specific causation" element into the discovery rule. However, knowledge of the specific cause of a work-related injury is not required to trigger the statute of limitations in a FELA action. Rather, a FELA claim accrues when the plaintiff knows or should know that his injury is merely work-related. Bealer v. Missouri Pac. R.R. Co., 951 F.2d 38, 39 (5th Cir. 1991) (per curiam). Therefore, the relevant inquiry in this case is when Matson knew or should have

7

known there was a causal relation between his employment with BNSF and his back injury, not when Matson knew the repetitive vibrations of BNSF's locomotives was the specific cause of that back injury.

The undisputed facts in this case reveal that Matson knew about his back injury and should have known that his employment with BNSF was a potential cause of that injury no later than April 21, 1995. See Fries, 909 F.2d at 1095 (stating "the injured plaintiff need not be certain which cause . . . is the governing cause but only need know or have reason to know of a potential cause"). He complained of "chronic" back pain during his February 1995 appointment and attributed that pain to "his work on the railroad" at his second appointment on April 21, 1995. Appellant's App. at 95, 101. Matson's doctor similarly "started to draw an inference" during the April appointment that the back pain was work-related, and Matson and his doctor discussed the possible ways the pain could be connected to Matson's employment. Id. at 88. By that date, Matson was on notice that his job was a potential cause of his back injury. Armed with that knowledge, Matson had a duty to exercise reasonable diligence and investigate whether this suspicion was correct. See Johnson v. Norfolk & W. Ry. Co., 836 S.W.2d 83, 86 (Mo. Ct. App. 1992) ("Rather than waiting for a physician's diagnosis, a plaintiff has an affirmative duty to investigate his injury and any suspect cause once he experiences symptoms."). The district court correctly held

8

that Matson's claims accrued no later than April 21, 1995.

B.

Matson next contends that even if he knew or should have known the cause of his injury more than three years before he filed suit, the district court erred in failing to toll the commencement of FELA's limitations period by applying the continuing tort doctrine. Under that doctrine, "'where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury.'" Tiberi v. Cigna Corp., 89 F.3d 1423, 1430 (10th Cir. 1996) (quoting 54 C.J.S., Limitation of Actions § 177 (1987)). According to Matson, because he was exposed to the repetitive vibrations of BNSF's locomotives his entire career, his claims did not accrue until his retirement (and therefore his last exposure to the vibrations) in 1998.

The continuing tort doctrine does not apply in this case. The continuing tort doctrine is inapplicable when the injury is "'definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress.'" Tiberi, 89 F.3d at 1431 (quoting Wilson v. Giesen, 956 F.2d 738, 743 (7th Cir. 1992)).[1] Here, Matson knew about his back injury and should have known its cause more

[1] Matson insists that Tiberi's reliance on Wilson was misplaced and should not be followed in this case. Because we are bound by the decisions of other panels of this court, see In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam), we do not address this contention.

9

than three years before he filed suit. Accordingly, the continuing tort doctrine does not prevent the running of FELA's statute of limitations in this case. Cf. United States v. Hess, 194 F.3d 1164, 1176 n.13 (10th Cir. 1999) (declining to apply continuing tort doctrine in trespass action because the government should have reasonably discovered defendants' ongoing trespass).

Perhaps foreseeing this result, Matson cites Fowkes v. Pennsylvania Railroad Co., 264 F.2d 397 (3d Cir. 1959), and Fletcher v. Union Pacific Railroad Co., 621 F.2d 902 (8th Cir. 1980), for the proposition that when a railroad employee is subjected to ongoing conditions that cause an injury, FELA's statute of limitations is tolled until the last day the employee is exposed to those conditions, even if the employee was aware of the injury and its cause beforehand.[2] In Fowkes, the court held that a railroad worker's claim for an arthritic shoulder caused by several years of using an air hammer did not accrue before he "was relieved of jolting work with the heavy hammer." 264 F.2d at 399. In Fletcher, the court characterized Fowkes as applying the continuing tort doctrine to a FELA claim, and it relied on that decision to hold that the railroad company's refusal over many years to accommodate an employee's back injury by

---

[2] Matson also cites Simmons v. American Mutual Liability Insurance Co., 433 F. Supp. 747 (S.D. Ala. 1976), aff'd, 560 F.2d 1022 (5th Cir. 1977), for this proposition, but that diversity case is readily distinguishable because it involved the application of a state law tolling rule in a breach of warranty claim.

10

assigning him to a less strenuous position constituted a continuing tort sufficient to toll the employee's claim until the date of his transfer.  621 F.2d at 908.

Although Fowkes and Fletcher may appear to support Matson's position, subsequent interpretations of those decisions undercut his arguments on appeal. For example, the Third Circuit has clarified that it did not apply the continuing tort doctrine in Fowkes because the jury in that case specifically found that the plaintiff neither knew nor should have known about his arthritis more than three years before filing suit.  See Kichline, 800 F.2d at 359-60.  In other words, the plaintiff's claim did not accrue prior to leaving his position, and there was no need to toll the statute of limitations.  Noting that it would be "an entirely different situation" if the plaintiff had known of his injury and its cause before he stopped using the air hammer, id. at 359, the Kichline court interpreted "Fowkes to mean that continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information," id. at 360. Following the Third Circuit's rejection of the continuing tort doctrine in Kichline, at least one court has expressly declined to follow Fletcher because it was based on a misreading of Fowkes, see Krouse, 627 A.2d at 496-97, and other courts have held that the continuing tort doctrine does not toll FELA's statute of limitations where a plaintiff knows or should have known about the injury and its cause.  See, e.g., Mounts v. Grand Trunk W. R.R., 198 F.3d 578, 583-84 (6th Cir.

11

2000); <u>Ricard v. Elgin, Joliet & E. Ry. Co.</u>, 750 F. Supp. 372, 375 (N.D. Ind. 1990); <u>Stokes v. Union Pac. R.R. Co.</u>, 687 F. Supp. 552, 554 (D. Wyo. 1988). In this case, the undisputed evidence reveals that Matson knew about his injury and should have known its potential cause no later than April 21, 1995 -- several years before he retired from BNSF. The district court was correct in refusing to apply the continuing tort doctrine to Matson's claims.

AFFIRMED.