**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 13, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONALD E. ROBINSON,

    Plaintiff-Appellant,

v.

BNSF RAILWAY COMPANY,

    Defendant- Appellee.

No. 10-7031

(D.C. No. 6:08-CV-00326-SPS)
(E.D.Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK,** and **HOLMES**, Circuit Judges.

On August 28, 2008, Plaintiff Ronald Robinson filed suit against his employer, Defendant BNSF Railway Co., under the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701–20703, and the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–61. Plaintiff "seek[s] compensation for serious cervical and lumbar spine injuries he sustained as a result of cumulative and repetitive trauma [he] experienced while working for BNSF" over thirty-eight years as a machinist and conductor. Appx. at 69. Defendant moved for summary judgment arguing that Plaintiff's claim is barred by FELA's three-year statute of limitations. The district

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court found that it was and granted BNSF's motion.

Exercising jurisdiction under 28 U.S.C. § 1291, "[w]e review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005) (internal quotations omitted). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). When reviewing the evidence, we draw all reasonable inferences therefrom in the light most favorable to Plaintiffs. Garrison, 428 F.3d at 935. After careful review, we affirm.

I.

Plaintiff worked for BNSF as a machinist and conductor from 1970 to 2008. Appx. 9–10. In 1999, he visited a hospital for pain in his groin and leg and indicated he experienced neck and back pain. Id. at 46. In 2000, Plaintiff again experienced some neck pain. Id. at 89. Curious as to the cause of that pain, Plaintiff underwent an MRI of his cervical spine. The subsequent report indicated "moderate degenerative changes involving discs which are narrowed and desiccated," specifically mentioning discs C6-7, C5-6, C4-5, C3-4, C2-3, C1-5. Id. at 47. According to Plaintiff, that pain went away on its own. Id. at 89. In February 2003, Plaintiff saw a doctor "to establish general medical care." Id. at 49. In the "past medical history" section of the doctor's report, the doctor notes Plaintiff has "cervical disc disease" and "lumbar disc disease." Id. The doctor's report also

2

indicates they discussed the nature of Plaintiff's railroad work, noting that Plaintiff worked six days a week for the railroad with "extraordinary" hours, "[o]ftentimes, stretching 70 hours [or] more. He does quite a bit of manual labor and . . . walks approximately two to three miles a day as a result." Id. Plaintiff later testified that there were no other activities that he engaged in outside of his work for BNSF that could have caused his neck and back pain in 2000 and 2003. Id. at 43–44. Then in January 2004, Plaintiff saw that same doctor "for problems related to chest pain and shortness of breath." The doctor noted in his report that Plaintiff "ha[d] been" experiencing "persistent low back and neck pain" in addition to "exquisite pain running down the groin or legs," which he "advised . . . probably relates to degenerative disc disease." Id. at 51. The doctor ordered lumbar x-rays, which revealed that "[t]here are diffuse degenerative changes throughout the entire lumbar spine from L1 through S1. There is decrease in the disk heights at each level, but most notably at L5-S1 and to a lesser extent, L4-5." Id. at 52. After a July 2004 exam, the doctor reported Plaintiff "reports still having some neck problems and was of course diagnosed with cervical disk disease. In addition, he reports having a strange sharp pain that comes and goes in the left groin area. . . . It is very positional and for the most part is getting better on its own. He does climb stairs frequently and is of course quite active in general with his job." Id. at 53. In September 2005, within the applicable statute of limitations period, the doctor noted after another examination that Plaintiff:

3

Complain[ed] of having chronic muscular tension, particularly in the neck and the back, and this is partly related to his many years of working at the railroad. We have reviewed previous x-rays of his neck which has shown degenerative changes and his lumbar x-rays have also indicated that he has some degenerative changes notably in the L5-S1 interspace.

Id. at 54. In 2006, Plaintiff alleges that his neck and back pain would not go away and grew progressively worse, radiating to his legs and arms. Id. at 92. Finally, in 2008 Plaintiff sought treatment for back and neck pain which radiated to his extremities (arms, groin, and knee) from another doctor. Id. at 114. After Plaintiff underwent a cervical and lumbar spine MRI, that doctor diagnosed him with ruptured discs in his cervical and lumbar spine at C5-6, C6-7, L4-5, and L5-S1 and informed him these injuries were causally related to his railroad work. Id. at 93, 115. Shortly thereafter, Plaintiff filed this action. Plaintiff ultimately had back surgery to treat his condition in September 2008 and January 2009. Id. at 125–26.

## II.

"FELA permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees." Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1235 (10th Cir. 2001).[1] "To maintain a claim under FELA, the plaintiff must allege and prove that the action was filed 'within three years from

---

[1] In contrast, the LIA "imposes 'an absolute duty' on railroad carriers to ensure that their locomotives are both properly maintained and safe to operate." Id. We have explained that "[b]ecause LIA does not create an independent cause of action, such a claim must be brought under FELA." Id.

the day the cause of action accrued.'" Id. (quoting 45 U.S.C. § 56). Thus, to affirm the district court we must conclude "(1) that the statute of limitations has run and (2) there exists no genuine issue of material fact as to when the plaintiff's cause of action accrued." Fries v. Chi. & Nw. Transp. Co., 909 F.2d 1092, 1094 (7th Cir. 1990). Given the three-year statute of limitations, Plaintiff's cause of action is time barred if it accrued before August 28, 2005—three years before August 28, 2008.

"FELA does not define when a cause of action accrues." Matson, 240 F.3d at 1235. But we previously have held that in "'cases involving latent injuries which cannot be discovered immediately or those where the injury has an indefinite onset and progresses over many years unnoticed,'" the "discovery rule" defines when a FELA cause of action accrues. Id. (quoting Nat'l R.R. Passenger Corp. v. Krouse, 627 A.2d 489, 493–94 (D.C. App. 1993)). In such cases the "'statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of the action.'" Id. (quoting Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994). "This rule imposes upon plaintiffs an affirmative duty to exercise reasonable diligence and investigate the cause of a known injury." Id.

As to the first part of that test—existence of the injury itself—when an injury results from repeated exposure to a deleterious condition, a plaintiff's FELA cause of action accrues "'only when the accumulated effects of the deleterious [condition] manifest themselves.'" Urie v. Thompson, 337 U.S. 163, 170 (1949) (quoting Assoc.

5

Indemnity Corp. v. Indus. Accident Comm'n, 12 P.2d 1075, 1076 (Cal. Dist. Ct. App. 1932)). Manifestation does not mean a plaintiff knows the precise nature or medical origin of the injury. Instead, we deem a plaintiff "aware of the injury once he or she has been apprised of the general nature of the injury. Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute." Gustavson v. U.S., 655 F.2d 1034, 1036 (10th Cir. 1981); see also Fries, 909 F.2d at 1095 (explaining that the discovery rule requires "an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause"). For that reason, that a plaintiff's "injury had not reached its maximum severity . . . but continued to progress does not affect this result." Fries, 909 F.2d at 1096. As to the second part of that test—cause of the injury—the plaintiff need know or have reason to know "his injury is merely work related." Matson, 240 F.3d at 1236. Therefore, we must determine whether the evidence in the light most favorable to Plaintiff creates a genuine issue as to whether Plaintiff knew or with reasonable diligence should have known before August 28, 2005 that he had suffered a cumulative neck and back injury and that such injury was related to his work for Defendant.

## III.

Applying the discovery rule, the district court granted Defendant's motion for summary judgment. The district court found "Plaintiff suffered from intermittent neck and back pain as early as 1999 and performed little strenuous physical activity

6

other than his job as a conductor for BNSF." Appx. at 167–68. Additionally, the court determined Plaintiff's doctor connected his symptoms to his work as early as February 2003 and Plaintiff did not tell his doctor about any activity that could have caused them besides his work for BNSF. Id. at 168. Consequently, the district court concluded that Plaintiff knew or should have known of his injury and that it was work-related more than three years before he sued BNSF. Id. at 167.

On appeal, Plaintiff focuses primarily on the first component of the discovery rule, making much of the purported legal distinction between intermittent and persistent pain. He argues he only suffered intermittent neck and back pain before August 2005, which was insufficient to put him on notice of his cumulative injury. Plaintiff seems to claim that his action for a cumulative injury did not accrue until his pain became persistent in 2006, within the statute of limitations period. But assuming without deciding such a legal distinction between those two kinds of pain exists, it is irrelevant in this case. First, Plaintiff's medical records indicate that he complained of persistent back pain in 2004. Second, and most important, Plaintiff's doctors diagnosed him with degenerative cervical and lumbar disc disease—a condition that by its definition is permanent and only going to get worse over time without medical treatment. He therefore knew that his neck and back pain he experienced in 2003 and 2004 was not the result simply of muscle aches from his occupation's manual labor or advancing age but rather a degenerative condition. Regardless of whatever level of pain—intermittent, persistent, or

7

otherwise—Plaintiff endured before August 2005, he had been diagnosed with a neck and back injury by the end of 2004. By that point, the accumulated effects of the working conditions about which he now complains had manifested themselves at least in the form of a medical diagnosis, and so Plaintiff knew or should have known the general nature or essential facts of his alleged cumulative injury. See Matson, 240 F.3d at 1234, 1236 (deciding the plaintiff's claim was barred because he had reason to know of his alleged cumulative back injury no later than the date he saw a doctor for his chronic back pain and associated it with his railroad work which was outside of the statute of limitations period, even though it was not until within the statute of limitations period that he was diagnosed with a herniated and degenerated disc).

In so concluding, we do not mean to say that as a matter of law or fact herniated discs are always the end result of degenerative disc disease. But in this case, Plaintiff admits no discrete or acute event occurred within the statute of limitations period that caused his herniated discs. And, the medical reports from before August 2005 indicate many of the discs afflicted by degenerative disc disease are the same discs that subsequently herniated. Similarly, though Plaintiff's counsel contends Plaintiff could have reasonably thought at the time that something other than his work (such as advancing age) caused his degenerative disc disease, he does not assert something other than his work actually did cause that condition or its associated pain. Appx. at 41, 43–44. Rather, as best we can tell, Plaintiff seems to

8

think both his degenerative disc disease and the associated pain as well as his herniated discs are all part of the same cumulative injury caused by his work for BNSF, but that he just had no way to know that before his pain became persistent in 2006.  The record, however, reveals that Plaintiff knew or had reason to know of this cumulative injury to his neck and back well before the statute of limitations bar in August 2005 because by July 2004 Plaintiff had been informed he had cervical and lumbar degenerative disc disease.  The record also demonstrates Plaintiff attributed his neck and back pain before August 2005 to nothing besides his years of work for BNSF.  For these reasons, we agree with the district court that Plaintiff knew or had reason to know of his alleged cumulative injury to his neck and back and of its work-relatedness before August 28, 2005.  Thus, FELA's statute of limitations bars his suit.

**AFFIRMED.**

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

9