# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PASCAL METRICS, INC., )
 )
 Plaintiff, )
 )
v. ) C.A. No. N22C-01-175 MMJ CCLD
 )
HEALTH CATALYST, INC., )
 )
 Defendant. )

Submitted: March 29, 2023
Decided: April 19, 2023

On Defendant's Motion for
Summary Judgment
**DENIED**

On Plaintiff's Motion to Exclude
the Expert Opinions of Fran Griffin
**DENIED**

On Plaintiff's Motion to Exclude
the Expert Opinions of Dr. Steven Handler
**DENIED**

On Plaintiff's Motion to Exclude
the Expert Opinions of Kenneth Mathieu
**DENIED**

On Defendant's Motion to Exclude
the Expert Opinions of Walter Bratic
**DENIED**

On Plaintiff's Motion to Exclude
the Expert Opinions of Nick Ferrara
**DENIED**

On Defendant's Motion to Exclude
the Expert Opinions of Dr. Amol Navathe
**DENIED**

On Plaintiff's Motion to Strike Exhibit 73
to Health Catalyst's Summary Judgment Brief
**DENIED AS MOOT**

On Plaintiff's Motion to Strike
Defendant's Reply Brief Evidence
**DENIED AS MOOT**

## OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan, LLP, Wilmington, DE, Max L. Tribble, Jr., Esq. (*pro hac vice*), Rocco F. Magni, Esq. (*pro hac vice*) (Argued), Sylvanus Polky, Esq. (*pro hac vice*) (Argued), Scarlett Collings, Esq. (*pro hac vice*), Susman Godfrey L.L.P., Houston, TX, Kalpana Srinivasan, Esq. (*pro hac vice*), Susman Godfrey L.L.P., Los Angeles, CA, Komal Patel, Esq., (*pro hac vice*) (Argued), Dinis Cheian, Esq. (*pro hac vice*), Susman Godfrey L.L.P., New York, NY, *Attorneys for Plaintiff*

F. Troupe Mickler IV, Esq., Randall J. Teti, Esq., Ashby & Geddes, P.A., Wilmington, DE, Gregory M. Saylin, Esq. (*pro hac vice*), Tyson C. Horrocks, Esq. (*pro hac vice*), Cory A. Talbot, Esq. (*pro hac vice*) (Argued), Eric G. Maxfield, Esq. (*pro hac vice*) (Argued), Doyle Byers, Esq. (*pro hac vice*) (Argued), Holland & Hart LLP, Salt Lake City, UT, *Attorneys for Defendant*

**JOHNSTON, J.**

### FACTUAL AND PROCEDURAL CONTEXT

This is a trade secret case. Pascal Metrics, Inc. ("Pascal") is a health information technology company that developed its Risk Trigger Monitor application ("RTM"). The RTM was released in 2014. Health Catalyst, Inc.

("HCAT") is also a health information technology company that released a competing product known as the Patient Safety Monitor ("PSM"). The PSM was released on July 17, 2018.

Stanley Pestotnik ("Pestotnik") worked for Pascal as a Senior Advisor and Chief Strategy Officer. In October 2016, Pestotnik accepted an offer to work at HCAT as its Senior Vice President of Patient Safety Products. Pestotnik helped develop RTM at Pascal, and PSM at HCAT. Two other Pascal employees also joined HCAT from Pascal—Alejo Jumat ("Jumat") and Velere Lemon ("Lemon").

Pascal's Chief Executive Officer, Drew Ladner ("Ladner") had concerns that Pascal's previous employees were using Pascal's proprietary information to build a competing product for HCAT. In Spring and Summer of 2017, Pascal's Chief of Staff, Alejandra Alvarez ("Alvarez"), documented various items from HCAT's website, including screenshots and downloaded content. These screenshots and downloads include a webinar titled "Using Data to Improve Patient Safety: Part 2— Real Life Use Cases," and a report by Pestotnik and Lemon titled "How to Use Data to Improve Patient Safety."

Pascal also questioned the relationship between its Chief Medical Informatics Officer, David Classen ("Classen"), and Pestotnik. Classen had a consulting agreement with HCAT and was close friends with Pestotnik. Towards the end of

3

2017, Ladner expressed concerns about Classen sharing confidential information with Pestotnik.

Pascal filed suit against HCAT in the Court of Chancery on December 21, 2020. On January 25, 2022, the case was transferred to the Complex Commercial Litigation Division of the Delaware Superior Court. Pascal's Second Amended Complaint alleges: (1) misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act (Count I); and (2) tortious interference with contractual relations (Count II). On June 15, 2022, the Court dismissed Count II (tortious interference).

HCAT filed the instant Motion for Summary Judgment on February 3, 2023. The Court heard oral argument on March 29, 2023. Trial is scheduled to begin on June 5, 2023.

## ANALYSIS

### *Summary Judgment Standard*

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[1] All facts are viewed in a light most favorable to the non-moving party.[2] Summary judgment may not be granted if the record indicates that a material

---

[1] Super. Ct. Civ. R. 56(c).
[2] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).

4

fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[3] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[4] If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[5]

### *Statute of Limitations*

The relevant statute of limitations, 6 *Del. C.* § 2006, provides: "An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim."

On June 28, 2018, Ladner sent an email to Alvarez stating: "[I]t appears that Pascal has a solid case not only with respect to the two employees[,] but with respect to the damage caused by the use of proprietary information." HCAT launched PSM on July 17, 2018. Pascal filed its original complaint in the Court of Chancery on December 21, 2020.

---

[3] Super. Ct. Civ. R. 56(c).
[4] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5

Pascal argues HCAT was on inquiry notice by July 14, 2017, when Alvarez shared content from HCAT's website with Ladner. By July 14, 2017, Pascal had discovered Pestotnik, Lemon, and Jumat had joined HCAT, and Pascal was allegedly suspicious HCAT may be working on a product to compete with RTM.

Where a question "turns on the issue of inquiry notice, "summary judgment is appropriate if there is a 'red flag' that 'clearly and unmistakably' would lead a prudent person to investigate and thereby discover the basis for the cause(s) of action alleged."[6]

> A person is on inquiry notice when they objectively are aware of facts "sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of facts constituting the basis of the cause of action. Inquiry notice does not require that a plaintiff be aware "of all of the aspects of the alleged wrongful conduct."[7]

To prove misappropriation of trade secrets, Pascal carries the burden of proving four elements:

> (1) that a trade secret exists; (2) that plaintiff communicated the trade secret to defendant; (3) that the communication occurred with the understanding that defendant would protect the secrecy of the information; and (4) that the defendant improperly used or disclosed the trade secret.[8]

---

[6] *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *8 (Del. Super.), *aff'd*, 247 A.3d 674 (Del. 2021) (citing *Boerger v. Heiman*, 965 A.2d 671, 675 (Del. 2009)).

[7] *Id.* at *9 (internal citations removed).

[8] *ELENZA, Inc. v. Alcon Lab'ys Holding Corp.*, 2017 WL 2651716, at *2 (Del. Super.), *aff'd*, 183 A.3d 717 (Del. 2018) (internal citations removed).

To maintain a successful claim for misappropriation of trade secrets, a plaintiff must show both the existence of a trade secret and its misappropriation."[9]

"A party may obtain injunctive relief and damages against one who acquires, uses or discloses a trade secret obtained through improper means."[10] HCAT argues Pascal could have filed an action for injunctive relief before PSM's product launch, and before actual damages occurred. The Court finds that the statute of limitations does not strictly apply to equitable relief.[11] Instead, laches is the proper standard.[12] "Unlike a statute of limitations, the equitable doctrine of laches does not prescribe a specific time period as unreasonable."[13]

In *Estate of Valdez v. BNSF Railway Company*,[14] this Court applied the discovery rule, which states that "the statute of limitations 'begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'"[15] The discovery rule is applied when "the injury is

---

[9] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 589 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).
[10] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002).
[11] *Whittington v. Dragon Grp.*, L.L.C., 991 A.2d 1, 8 (Del. 2009) ("Although statutes of limitations always operate as a time-bar to actions at law, they are not controlling in equity.").
[12] *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *12 (Del. Ch.) ("A statute of limitations period at law does not automatically bar an action in equity because actions in equity are time-barred only by the equitable doctrine of laches.").
[13] *Whittington*, 991 A.2d at 7.
[14] 2020 WL 7365800 (Del. Super.).
[15] *Id.* at *3 (quoting *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001)).

'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'"[16]  Applying the discovery rule requires a fact intensive inquiry that may require factfinding by a jury.[17]

"It has long been held that courts should not 'apply statute of limitations law in a way that pressures litigants to file suits based merely on suspicions and fears.'"[18] For Pascal to be on inquiry notice, it was not sufficient that Pascal had knowledge of the development of a potentially competing product for future release.[19]

The Court finds that for inquiry notice to trigger the statute of limitations, Pascal needed at least to have knowledge of the potential future for damages—even if specific damages were not yet known or knowable.  In this case, no alleged damages were actually incurred until the PSM product launch on July 17, 2018. Thus, the statute of limitations began to run with the PSM product launch, or at the earliest, with the June 28, 2018 email acknowledging damages.

The Court considered the comparison between: (1) the single graphic that Pestotnik and Lemon used in a 2017 presentation and article (the "2017 graphic");

---

[16] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (quoting *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004)).
[17] *See Est. of Valdez,* 2020 WL 7365800, at *4.
[18] *Accenture Glob. Servs. GmbH v. Guidewire Software Inc*., 691 F. Supp. 2d 577, 594 (D. Del. 2010) (quoting *Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp*., 15 F.3d 1427, 1430 (7th Cir. 1994)).
[19] *See id.* at 593–94 (explaining that inquiry notice was not triggered until plaintiffs had reviewed "comprehensive technical information" because before that time it was not clear that "plaintiffs possessed (or could have possessed) more than concerns and suspicions").

and (2) Pascal's internal design document.[20]  While the comparison shows similarities, the Court finds Pascal's knowledge of the 2017 graphic insufficient to constitute inquiry notice of misappropriation.  Information set forth on the 2017 graphic would not "'clearly and unmistakably' [] lead a prudent person to investigate and thereby discover" the alleged misappropriation. [21]  Rather, the 2017 graphic raised mere suspicion and fear of competition.  Thus, Pascal's knowledge of the similarities between the 2017 graphic and its own internal design document did not start the running the statute of limitations.

The Court need not address Pascal's fraudulent concealment arguments because there is no need for a factual inquiry.

HCAT's Motion for Summary Judgment on the basis of the statute of limitations is hereby **DENIED**.  Pascal's complaint for misappropriation of trade secrets was timely filed.

*Trade Secrets*

A trade secret is defined pursuant to 6 *Del. C.* 2001(4) as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>     a. Derives independent economic value, actual or potential, from not being generally known to, and not

---

[20] *See* Ex. 25 to HCAT's Mot. for Summ. J.  The Court also notes the similarities between the 2017 version of the graphic and the 2019 version of the graphic, where the only noticeable difference is the product's name change in the upper-left corner.  *See* HCAT's Reply Br. 5–6.

[21] *See Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *8 (Del. Super.), *aff'd*, 247 A.3d 674 (Del. 2021) (citing *Boerger v. Heiman*, 965 A.2d 671, 675 (Del. 2009)).

being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Pascal identified its Trigger Algorithms and Global Safety Risk Score Algorithm as designated trade secrets with the Court of Chancery on September 8, 2021.[22] "Whether the trade secrets were generally known or readily ascertainable and whether [the plaintiff] took reasonable precautions to protect their secrecy" are questions of fact.[23] Even if "all of the components and techniques" of the designated trade secret are readily ascertainable through public literature, it is possible for an organization to still possess a unique combination of those components and techniques that would constitute a trade secret.[24] Ascertaining reasonable efforts to protect the secrecy of a trade secret involves factual inquiry.[25]

The Court finds that genuine issues of material fact prevent summary judgment on the issue of trade secrets. These include: (1) whether Pascal's claimed trade secrets were readily ascertainable in public literature; (2) whether reasonable

---

[22] Ex. 34 to HCAT's Op. Br. in Support of Its Mot. for Summ. J.

[23] *SmithKline Beecham Pharms. Co. v. Merck & Co*., 766 A.2d 442, 448 (Del. 2000).

[24] *Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *19 (Del. Ch.) ("[E]ven if all of the components and techniques used to create and manufacture XDB–C18 were known in the scientific community, the unique configuration of XDB–C18 is not known and could not easily be reverse-engineered.").

[25] *Data Gen. Corp. v. Digital Computer Controls, Inc*., 297 A.2d 437, 439 (Del. 1972) (concluding that determining the degree of dissemination of trade secrets and the sufficiency of the efforts to protect the trade secrets is a question of fact not appropriate for resolution on summary judgment).

or adequate measures were taken to protect Pascal's claimed trade secrets; (3) whether a "trigger" is a trade secret; (4) whether Pascal reasonably maintained the secrecy of its claimed trade secrets; and (5) whether the claimed trade secret derives independent economic value from not being generally known or not being readily ascertainable.

Therefore, summary judgment on the issue of the existence secrets is hereby **DENIED**.

The Motions to Strike Exhibits 73–76 to HCAT's Motion for Summary Judgment are hereby **DENIED AS MOOT**. The Court did not take Exhibits 73–76 into consideration in these rulings.

### *Motions to Exclude Expert Witnesses*

The Delaware Supreme Court has adopted the Daubert standard to determine the admissibility of expert testimony.[26] Under this standard, the Court asks whether: (i) the witness is "qualified as an expert by knowledge, skill, experience, training or education;" (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information "reasonably relied upon by experts in the particular field;" (iv) the expert testimony will "assist the trier of fact to understand the evidence or

---

[26] *See Eskin v. Carden*, 842 A.2d 1222, 1231 (Del. 2004) (citing *Daubert v. Merrell Dow*, 509 U.S. 579 (1993)).

to determine a fact in issue;" and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[27]

Delaware Rule of Evidence 702 provides that an expert witness may provide opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Pascal seeks to exclude the expert testimony of Fran Griffin ("Griffin"), Dr. Steven Handler ("Handler"), Kenneth Mathieu ("Mathieu"), and Nick Ferrara ("Ferrara").

HCAT designated Griffin as a rebuttal expert to provide opinion testimony regarding whether Pascal's designated trade secrets can be readily ascertained through public sources. Griffin concluded Pascal's designated trade secrets were readily ascertainable through public sources.

HCAT designated Handler as a rebuttal expert to opine whether Pascal's triggers can be readily ascertained, and whether Pascal's triggers have independent economic value. Handler concluded that Pascal's triggers were readily ascertainable

---

[27] *Id*. at 1227 (quoting *Cunningham v. McDonald*, 689 A.2d 1190, 1193 (Del. 1997)).

12

through public sources, and that Pascal's triggers do not have independent economic value.

HCAT designated Mathieu as a rebuttal damages expert. Pascal seeks only to exclude the portion of Mathieu's expert testimony regarding the value of HCAT's alleged use of Pascal's trade secrets. Assuming liability, Mathieu calculated damages to be approximately $2.4 million.

HCAT designated Ferrara as a rebuttal expert to opine: "(1) whether Pascal took reasonable measures to protect its trade secrets' confidentiality[;] (2) whether Pascal's trade secrets have independent economic value[;] [] (3) whether Pascal's trade secrets are readily ascertainable;" and (4) "whether [HCAT] used Pascal's trade secrets."[28] Pascal seeks only to exclude Ferrara's opinions related to whether Pascal's trade secrets are readily ascertainable, and whether HCAT used Pascal's trade secrets. Ferrara concluded that Pascal's triggers were readily ascertainable, and that HCAT did not use the designated trade secrets.

HCAT seeks to exclude the expert testimony of Walter Bratic ("Bratic") and Dr. Amol Navathe ("Navathe").

Bratic is Pascal's affirmative damages expert. Assuming liability, Bratic calculated damages to be approximately $62.2 million. Bratic used HCAT's ability

---

[28] Pl.'s Mot. to Exclude Ops. of Nick Ferrara 2.

to raise investor funding when calculating damages related to HCAT's alleged unjust enrichment.

Navathe is Pascal's expert to opine on whether various components of RTM, designated as trade secrets, constitute trade secrets. Navathe concluded that each of Pascal's designated trade secrets is a trade secret.

The Court finds that each of the six experts in dispute is qualified. The parties' objections go to the weight to be accorded the testimony, not to the admissibility of the experts' opinions. The testimony of each expert witness will be limited to the scope of their pre-trial opinion. Rebuttal experts will be limited to their opposing opponent's opinions.

By way of clarification, and to provide guidance to the parties in preparation for trial, the Court makes the following additional rulings.

The Court finds the definition of "use" is not disputed with respect to HCAT's alleged "use" of Pascal's trade secrets. "When interpreted specifically in the context of trade secret misappropriation, the term 'use' has been broadly defined as 'any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant[.]'"[29]

---

[29] *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 909 (3d Cir. 2021) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450–51 (5th Cir. 2007)).

14

The Court finds that damages experts cannot opine on the basis of speculative evidence with regard to investor funding. The Court will need to review evidence of investor motivation, to determine whether it is inadmissible hearsay, before this type of expert testimony will be permitted.

The Court finds that Pascal's Trigger Algorithm includes trigger logic. The triggers are a set of logical rules, which are a component of the RTM.

The Court cautions the parties against presenting duplicative testimony, particularly where more than one expert is designated for the same or closely-related subject matter.

Therefore, Pascal's Motions to Exclude the Expert Testimony of Griffin, Handler, Mathieu, and Ferrara are hereby **DENIED**. HCAT's Motions to Exclude the Expert Testimonies of Navathe and Bratic also are hereby **DENIED**.

Pascal's Motion to Strike Exhibit I to HCAT's Reply in Support of Motion to Exclude Navathe is hereby **DENIED AS MOOT**. The Court did not take Exhibit I into consideration in these rulings.

## CONCLUSION

The Court finds that the statute of limitations does not strictly apply to equitable relief. [30]

---

[30] *Whittington v. Dragon Grp.*, L.L.C., 991 A.2d 1, 8 (Del. 2009) ("Although statutes of limitations always operate as a time-bar to actions at law, they are not controlling in equity.").

The Court finds that for inquiry notice to trigger the statute of limitations, Pascal needed at least to have knowledge of potential future damages—even if specific damages were not yet known or knowable. No alleged damages were actually incurred until the PSM product launch on July 17, 2018. Thus, the statute of limitations began to run with the PSM product launch, or at the earliest with the June 28, 2018 email acknowledging damages. The Court finds Pascal's knowledge of the 2017 graphic insufficient to place Pascal on inquiry notice of misappropriation. HCAT's Motion for Summary Judgment on the basis of the statute of limitations is hereby **DENIED**.

The Court finds that genuine issues of material fact prevent summary judgment on the issue of trade secrets. Therefore, summary judgment on the basis of trade secrets is hereby **DENIED**.

The Court finds that: (1) each of the six experts is qualified and objections go to weight, not admissibility; (2) the definition of "use" is not disputed with respect to HCAT's alleged "use" of Pascal's trade secrets; (3) damages experts cannot opine on the basis of speculative evidence with regard to investor funding; and (4) Pascal's Trigger Algorithm includes the trigger logic. Therefore, Pascal's Motions to Exclude the Expert Testimonies of Griffin, Handler, Mathieu, and Ferrara are hereby **DENIED**. HCAT's Motions to Exclude the Expert Testimonies of Navathe and Bratic also are hereby **DENIED**.

16

Pascal's Motion to Strike Exhibits 73, and Pascal's Motion to Strike Defendant's Reply Brief Evidence are hereby **DENIED AS MOOT**.  The Court did not take Exhibits 73–76 of HCAT's Summary Judgment Motion into consideration in these rulings.  The Court did not take Exhibit I to HCAT's Reply in Support of Motion to Exclude Navathe into consideration in these rulings.

**IT IS SO ORDERED.**

*/s/ Mary M. Johnston*
The Honorable Mary M. Johnston